## A10A1072. EDWARDS v. THE STATE.

(703 SE2d 130)

PHIPPS, Presiding Judge.

A jury found Wayne Leslie Edwards guilty of manufacturing methamphetamine,[1] conspiring to possess methamphetamine,[2] and possessing methamphetamine.[3] After merging the counts, the court sentenced Edwards on the possession count. On appeal, Edwards contends that the evidence was insufficient on all three counts. Because he has shown no merit in this contention, we affirm.

When an appellant challenges the sufficiency of the evidence to

---

[9] OCGA § 19-8-12 (a) (6).

[10] See *LaBrec*, supra at 312-313 (2).

[1] OCGA § 16-13-30 (b) (proscribing unlawful manufacturing, delivering, distributing, dispensing, administering, selling, or possessing with intent to distribute any controlled substance).

[2] OCGA § 16-13-33 ("Any person who attempts or conspires to commit any offense defined in [Article 2 of Chapter 13 of Title 16 the Official Code of Georgia] shall be, upon conviction thereof, punished by imprisonment not exceeding the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.").

[3] OCGA § 16-13-30 (a) (proscribing unlawful purchase, possession, or having under one's control any controlled substance).

support his conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[4]

So viewed, the evidence showed that on September 26, 2002, a man drove a red pickup truck to a welding supply company, where he purchased a tank of anhydrous ammonia. Because the substance was commonly used to manufacture methamphetamine, store personnel copied the purchaser's driver's license and recorded the color, make and license plate number of the vehicle he was driving. After the purchaser left, store personnel reported to the police the transaction, the purchaser's driver's license information, and a description of the truck. Four days later, the same man returned to the welding supply store, driving the same vehicle, and returned the tank.

On that day, undercover law enforcement officers followed the man from the store to 278 Englewood Road in Winder, residential property upon which was situated a mobile home registered to Edwards's wife. Law enforcement officers traced the tag number of the vehicle being driven by the purchaser to a red pickup truck registered to Edwards's wife with the Englewood address.

On October 2, 2002, the same man returned to the store in the same pickup truck and purchased another tank of anhydrous ammonia. Again, after the sale, officers followed the pickup to the Englewood address. Meanwhile, a search warrant for the Englewood address had been obtained. And on the evening of October 2, 2002, the warrant was executed by officers from several law enforcement agencies.

At the Englewood address were several structures, including the mobile home, which was the main residence, and a separate garage. Parked near the mobile home was Edwards's wife's red pickup truck. The man who had driven it to purchase the tanks of anhydrous ammonia was standing in the open garage and was immediately arrested. Another man standing nearby sprinted into nearby woods, but was quickly apprehended and arrested. Edwards and his wife were handcuffed in front of the mobile home.

Behind the garage, officers discovered several large steel pressurized anhydrous ammonia tanks, one of which was mounted onto a hand truck that had been specially modified to turn the tank upside down so that the liquid ammonia could be easily removed. The valve assembly on that particular tank showed that it had been exposed to anhydrous ammonia. And the surrounding area carried a strong and

---

[4] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979) (citation omitted; emphasis in original).

distinct odor of ammonia. In a storage closet at the back of the garage were cans of muriatic acid and a bottle of "liquid fire." Also on the property were several garden sprayers, two of which were actively "off-gassing" hydrogen chloride gas.

Inside a red Camaro parked in front of the mobile home were two cans of engine starting fluid, five boxes of Sudafed, numerous small Ziplock baggies, and a plastic Tupperware bowl that contained more than 1,000 tablets of pseudoephedrine.

In other areas of the Englewood property, there were numerous boxes of various brands of nasal decongestants that contained pseudoephedrine, as well as blister packs (the inner silver packaging) that had been removed from boxes of Sudafed tablets, additional garden sprayers, a two-eye electric burner, a one-gallon can of Coleman camping fuel, several one-gallon cans of Royal Oak lighter fluid, and various brands of engine starting fluid.

Several guns were found on the premises. One was found in a dresser drawer in the master bedroom of the mobile home. Atop the dresser in that bedroom was a driver's license. The name on the driver's license was "Wayne Leslie Edwards" with a residential address of "278 Englewood Road, Winder." Atop that same dresser, tucked inside a jewelry box, was a small plastic bag of methamphetamine. Underneath the bed in that room was a lock box. It housed a set of digital scales and recipes for producing either methamphetamine or a similar substance, methcathinone.

While the search was in progress, a black pickup truck arrived with three occupants. A search of that truck cab produced numerous boxes of Sudafed and other brands of nasal decongestant tablets. A search of that truck bed produced 18 empty cans of engine starting fluid, a garden sprayer box, remains of lithium batteries, and 25 empty boxes of Sudafed blister packs.

According to a Georgia Bureau of Investigation agent who had been trained in clandestine methamphetamine laboratory investigation and who had participated in the search at the Englewood address, the search had yielded necessary precursor ingredients, as well as tools commonly used for the manufacture of methamphetamine. Also, a state crime lab chemist and member of the clandestine laboratory response team who had accompanied the law enforcement officers to the Englewood address testified as an expert in clandestine laboratory analysis and methamphetamine manufacturing. He identified some of the items of evidence seized and testified that they either were components of methamphetamine or could be used in the manufacturing of the drug.

Challenging the sufficiency of the evidence, Edwards contends that the state's case showed merely his presence at the Englewood address. He specifically asserts that the evidence failed to show that

he was in possession of the methamphetamine, which was found inside the mobile home, and failed to show that he had any involvement with methamphetamine manufacturing. We disagree.

> Possession of contraband may be actual or constructive. Moreover, joint constructive possession with another will sustain a conviction for possession of contraband. A person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. The law recognizes that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons shared actual or constructive possession of a thing, possession is joint.[5]

Here, the evidence allowed for a finding that Edwards lived at the residence, that the mobile home was titled to his wife, that she lived at the Englewood residence, that she was present at the scene, and that the methamphetamine was discovered in the mobile home's master bedroom. Indeed, Edwards's wife was also charged with the offense of possession of methamphetamine (as well as the other two counts). Under these circumstances, the state was not required to show that Edwards was in sole or actual possession of the methamphetamine.[6] Rather, the state could establish the element of possession by showing that Edwards was in joint constructive possession of the contraband.[7]

Edwards is correct that evidence of mere presence at the scene of a crime, with nothing more to show participation of a defendant in the illegal act, is insufficient to support a conviction.[8] But the state did not base its case against Edwards merely upon his presence at the scene. In addition to showing that Edwards lived at the residence in question, the state adduced further evidence that methamphetamine was found in the master bedroom atop the same dresser as a driver's license bearing Edwards's name and the Englewood residential address; that stored in a lockbox underneath the bed in that room were recipes for producing methamphetamine or a similar substance, along with digital scales associated with the drug trade;

---

[5] *Cochran v. State*, 300 Ga. App. 92, 94 (1) (a) (684 SE2d 136) (2009) (citation omitted).

[6] Id.

[7] Id. at 94-95 (1) (a).

[8] See *Womble v. State*, 290 Ga. App. 768, 770 (2) (660 SE2d 848) (2008).

and that Edwards's residential premises was being used as a clandestine methamphetamine lab.

The evidence was sufficient for the jury to find beyond a reasonable doubt that Edwards was guilty of methamphetamine possession,[9] conspiracy to manufacture methamphetamine,[10] and manufacturing methamphetamine.[11] Because *Paden v. State*[12] and *Reid v. State*[13] are distinguishable, Edwards's reliance upon them is unavailing.

*Judgment affirmed. Miller, C. J., and Johnson, J., concur.*

DECIDED NOVEMBER 4, 2010.

*Donna A. Seagraves*, for appellant.

*James B. Smith, District Attorney, Robin R. Riggs, Assistant District Attorney*, for appellee.

---

[9] See *Jackson v. Virginia*, supra; *Castillo v. State*, 288 Ga. App. 828, 830 (655 SE2d 695) (2007) (noting that beyond a defendant's spatial proximity to drugs, constructive possession may be shown by demonstrating that the defendant knowingly had both power and intention at a given time to exercise control over the substance; power may be inferred from access to the drugs, while intent may be derived from the surrounding circumstances); *Kahn v. State*, 235 Ga. App. 229, 231 (1) (b) (509 SE2d 137) (1998) (while evidence that the defendant-owner or lessee shared premises with another does not demand a conviction, it may authorize the jury to find that the defendant was in at least joint possession of the contraband); see also *Womble*, supra at 770-771 (2).

[10] *Jackson v. Virginia*, supra; see generally *Williamson v. State*, 300 Ga. App. 538, 546-548 (5) (685 SE2d 784) (2009) (evidence was sufficient for jury to infer existence of a conspiracy and defendant's tacit understanding with his wife regarding the sale of methamphetamine from their home); *McWhorter v. State*, 275 Ga. App. 624, 627 (1) (a) (621 SE2d 571) (2005) (essence of conspiracy is a common design, and conduct which discloses a common design may give rise to inference of conspiracy). In charging conspiracy to possess methamphetamine, the indictment alleged that Edwards, his wife, and several others arrested with them at the Englewood property had done "an overt act to effect the object of the conspiracy, to wit: collected ingredients to manufacture methamphetamine."

[11] See *Kirby v. State*, 275 Ga. App. 216, 217-218 and n. 9 (620 SE2d 459) (2005) (evidence was sufficient to show that defendant was guilty of manufacturing methamphetamine, where defendant leased the house in which methamphetamine manufacturing was taking place, house contained a strong chemical smell that was immediately apparent upon entering the home, and defendant tested positive for methamphetamine in his system; further noting that, although defendant may not have actively participated in the manufacturing process, the evidence authorized the guilty verdict for aiding in the manufacturing by knowingly providing the location); see also *Boone v. State*, 293 Ga. App. 654, 656-657 (1) (667 SE2d 880) (2008); OCGA § 16-2-20 (concerning parties to a crime).

[12] 216 Ga. App. 188, 189 (1) (453 SE2d 788) (1995) (evidence was insufficient to connect defendant with crack cocaine found at the residence of an admitted crack cocaine user, a home where defendant did not live and did not regularly occupy).

[13] 212 Ga. App. 787, 789 (442 SE2d 852) (1994) (evidence was insufficient to connect defendant-passenger to cocaine found on floorboard of passenger side of a car he did not own; only mere presence at the crime scene was shown).