**FIFTH DIVISION**
**DILLARD, P. J.,**
**REESE and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 1, 2017**

# In the Court of Appeals of Georgia

A16A1817. HOWARD v. THE STATE.

DILLARD, Presiding Judge.

In 1987, following a trial, Ernest Howard was convicted on two counts of aggravated assault, one count of kidnapping with bodily injury, and one count of rape. Howard appeals his convictions and the denial of his motion for new trial, challenging the sufficiency of the evidence supporting his convictions, arguing that the State failed to prove venue, and maintaining that the trial court erred in denying his claims of ineffective assistance of counsel. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that around 1:00 a.m. on November 8, 1986, C. B. and G. H. set out with a group of

---

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

friends to a popular unlicensed bar called Jay Wright's in Lizella, Bibb County, Georgia. While there, a young man, ultimately identified as Howard, asked G. H. to dance and offered to buy her a drink, which she refused. After an hour or so, a fight broke out amongst some of the bar's patrons, and, in the confusion that ensued, the friends who had driven C. B. and G. H. to the bar left without them. Seeing that C. B. and G. H.'s friends had stranded them at the bar, Howard offered to drive the women home. The two women accepted Howard's offer and accompanied him to his car, at which point C. B. sat in the front passenger's seat and G. H. sat in the back of the vehicle.

Within a few minutes of leaving the bar, the women realized that Howard was not driving in the direction of their homes. When they asked him to explain this unexpected detour, Howard claimed that he needed to inform his mother that he would be late getting home. But shortly thereafter, Howard drove into some nearby woods via an unpaved, gravel road and stopped the car. Once parked, he reached under the driver's seat to retrieve a large knife, held the knife close to C. B.'s neck, and ordered both women to undress. The women complied, but after doing so, C. B. told Howard that she needed to go to the bathroom and asked if she could exit the

vehicle. After finishing, C. B. started toward the car but then suddenly slammed the passenger door shut and fled into the brush.

Howard immediately ordered G. H. to yell for her friend to return to the vehicle, and G. H. complied. But after several minutes, it became apparent that C. B. was not going to return, so Howard left the area and drove around for about three minutes before again parking. Once there, he raped G. H. and afterward told her to put her clothes back on. Howard then drove away from the area, stopped near a school, told G. H. to get out of his car, and then drove off. Eventually, G. H. waved down a passing motorist, who coincidentally had just assisted a police officer in changing another motorist's flat tire. The motorist helped G. H. into his vehicle and returned to where he had assisted the police officer, who at this point was still aiding the other motorist. After G. H. recounted the abduction, the officer made arrangements to have her transported to a hospital.

Meanwhile, after slamming the passenger door of Howard's car and fleeing, C. B. ran for several minutes through brambles and marshy areas before happening upon a group of young men who were camping in a cove on Lake Tobesofkee. Waking the men up, C. B. recounted the abduction and advised that her friend was still being held hostage. Agreeing to help, one of the campers told C. B. to get into

3

his truck, and he started the engine. As he did, he saw headlights illuminate from another vehicle, which appeared to be parked across part of the lake in another cove but was now beginning to move. Believing it to be C. B.'s assailant, the camper drove to the area where he had seen the headlights, but by the time he arrived, there were no other vehicles in sight. Consequently, at C. B.'s request, the camper drove her home.

Although both C. B. and G. H. provided a physical description of their assailant, neither was familiar with Howard, and thus, law enforcement initially made no arrest. But a few weeks later, C. B. was out at a different nightclub when Howard approached her and asked if he knew her from somewhere. Immediately recognizing Howard as her assailant, C. B. lied about knowing him and gave him a fake name. C. B. also refused Howard's offer of a ride home, and while still at the club, a friend told C. B. that she knew Howard, but only by his first name, which she said was Ernest. A few days afterward, another friend informed C. B. of Howard's last name and his place of employment. Subsequently, both C. B. and G. H. went to Howard's workplace, observed him from a distance, and positively identified him as their assailant. The woman then informed a detective with the Macon Police Department,

4

who obtained a warrant for Howard's arrest and, in fact, arrested him after he came to the police station for questioning.

Thereafter, the State charged Howard, via indictment, with two counts of aggravated assault with a deadly weapon (one count for each victim),[2] one count of kidnapping with bodily injury,[3] one count of rape,[4] and two counts of aggravated sodomy (both counts pertaining to G. H.).[5] The case then proceeded to trial, during which the State presented the foregoing evidence. And at the conclusion of the trial, the jury convicted Howard on both aggravated-assault charges, the kidnapping-with-bodily-injury charge, and the rape charge, but it acquitted him on both aggravated-sodomy charges.

The procedural history of Howard's case following his 1987 conviction can aptly be described as tortuous. His trial counsel filed a timely motion for new trial, which he later amended. On August 8, 1989, the trial court held a hearing on Howard's motion, during which his counsel informed the court that Howard wanted

---

[2] *See* former OCGA § 16-5-21 (a) (2) (1991).

[3] *See* former OCGA § 16-5-40 (a), (b) (1994).

[4] *See* former OCGA § 16-6-1 (a) (1994).

[5] *See* former OCGA § 16-6-2 (a) (1994).

to obtain new counsel and allege claims that his trial counsel rendered ineffective assistance. The trial court denied the majority of Howard's motion, but it agreed to hold a second hearing, in which Howard could assert his ineffective-assistance claims. The court then held this second hearing on September 28, 1989, during which Howard's trial counsel testified regarding his representation.

On November 2, 1989, the trial court issued an order denying Howard's motion for new trial, but it is unclear whether Howard ever received a copy of that order at that time. Over the course of the next 20 years, Howard, for the most part acting *pro se*, filed numerous motions with the trial court and nearly as many unsuccessful attempts to appeal the denials of those motions. Then, on September 27, 2013, Howard filed a motion for an out-of-time appeal, alleging—as he had done several times previously—that he did not receive a copy of the trial court's November 2, 1989 order until 1992. The trial court denied this motion as moot based on Howard having already filed another notice of appeal regarding other court orders. Howard appealed that order, and this Court vacated the trial court's judgment and remanded the case for a determination of whether Howard had timely received notice of the trial court's November 2, 1989 order. But agreeing with the State that it would be

6

impossible to determine whether Howard timely received the order, the trial court granted Howard's motion for an out-of-time appeal. This appeal follows.

1. Howard contends, generally, that the evidence was insufficient to support his convictions. We disagree.

At the outset, we note that when a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[6] And in evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility but only resolve whether "a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[7] Accordingly, the jury's verdict will be upheld so long as "there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case[.]"[8]

---

[6] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[7] *Joiner v. State*, 299 Ga. App. 300, 300 (682 SE2d 381) (2009); *see also Jackson*, 443 U.S. at 319 (III) (B).

[8] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

With these guiding principles in mind, we turn first to Howard's specific challenge in this regard.

Former OCGA § 16-5-21 (a) (2) provided, in pertinent part: "A person commits the offense of aggravated assault when he assaults . . . [w]ith a deadly weapon . . . which, when used offensively against a person, is likely to or actually does result in serious bodily injury."[9] Under former OCGA § 16-5-40 (a), "[a] person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will."[10] And "[a] person convicted of the offense of kidnapping shall be punished by . . . life imprisonment . . . if the person kidnaped shall have received bodily injury."[11] Finally, under former OCGA § 16-6-1 (a), "[a] person commits the offense of rape when he has carnal knowledge of a female forcibly and against her will," and "[c]arnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ."

In this case, the State presented evidence that Howard offered to drive the two victims home, but then took them to a remote location and ordered the women to

[9] *See* former OCGA § 16-5-21 (a) (2) (1991).

[10] *See* former OCGA § 16-5-40 (a) (1994).

[11] *See* former OCGA § 16-5-40 (b) (1994).

8

undress while he brandished a knife. Then, after C. B. escaped, Howard drove G. H. to another remote location and forced her to engage in sexual intercourse. Nevertheless, Howard argues that the evidence was insufficient because it was vague and there were some conflicts in the victims' testimony. But it is the role of the jury, not this Court, to "determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence."[12] And here, the jury resolved those conflicts against Howard. Thus, the evidence was sufficient to support Howard's convictions.[13]

2. Howard also contends that the State failed to prove beyond a reasonable doubt that Bibb County was the proper venue. Again, we disagree.

---

[12] *Harris v. State*, 332 Ga. App. 789, 790-91 (1) (775 SE2d 165) (2015) (punctuation omitted); *see Brock v. State*, 293 Ga. 156, 157-58 (1) (743 SE2d 410) (2013) ("It is the jury's role to assess the credibility of witnesses and resolve any inconsistencies in the evidence.").

[13] *See Bester v. State*, 294 Ga. 195, 195-96 (1) (751 SE2d 360) (2013) (holding that evidence was sufficient to support defendant's convictions on rape and aggravated assault charges); *Dennis v. State*, 293 Ga. 688, 689-90 (1) (748 SE2d 390) (2013) (holding that defendants moving victims from their own vehicle before shooting them was sufficient to support kidnapping-with-bodily-injury charge); *Wallace v. State*, 294 Ga. App. 159, 159-60 (1) (669 SE2d 400) (2008) (holding that evidence the defendant brandished a knife, moved victim under a desk in her office, forced her to have sexual intercourse there, and scratched her hip while doing so supported defendant's aggravated-assault, kidnapping-with-bodily-injury, and rape convictions).

The Georgia Constitution requires that venue in all criminal cases "be laid in the county in which the crime was allegedly committed."[14] And as with every other material allegation contained in an indictment, the State must prove venue beyond a reasonable doubt.[15] But the State may do so by circumstantial evidence.[16] Accordingly, as is the case with regard to the sufficiency of the evidence generally, the standard of review of the sufficiency of the evidence to support venue is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found venue beyond a reasonable doubt.[17] Importantly, venue is a question for the jury, and "its decision will not be set aside if there is any evidence

---

[14] *Jones v. State*, 272 Ga. 900, 901 (2) (537 SE2d 80) (2000); *see* Ga. Const. Art. VI, Sec. II, Par. VI. ("[A]ll criminal cases shall be tried in the county where the crime was committed, except cases in the superior courts where the judge is satisfied that an impartial jury cannot be obtained in such county."); OCGA § 17-2-2 (a).

[15] *Jones*, 272 Ga. at 901 (2); *accord Muldrow v. State*, 322 Ga. App. 190, 192 (2) (a) (744 SE2d 413) (2013).

[16] *Walton v. State*, 293 Ga. 607, 609 (2) (748 SE2d 866) (2013); *accord Stockard v. State*, 327 Ga. App. 184, 185 (761 SE2d 351) (2014).

[17] *Thompson v. State*, 277 Ga. 102, 103 (1) (586 SE2d 231) (2003).

to support it."[18] Bearing this legal backdrop in mind, we turn now to Howard's claim of error.

In this matter, both C. B. and G. H. conceded in their testimony that when Howard drove to the remote location where he parked, they did not know where they were. Nevertheless, the camper from whom C. B. sought help after she escaped testified that he and his friends were camping in a cove on Lake Tobesofkee in Bibb County when they encountered C. B. And indeed, C. B. noted that much of the area through which she fled was surrounded by water. The camper further testified that when he started his truck, he saw the headlights of another vehicle in a nearby cove illuminate and, given the early hour, presumed it was C. B.'s assailant. Additionally, the detective who investigated the case testified that the area where C. B. escaped and fled was Lake Tobesofkee in Bibb County. And he further testified that based on G. H.'s testimony that the second area where Howard parked after C. B. escaped was only three minutes away from the first area, this second location where the rape occurred was also more than likely within Bibb County.

---

[18] *Davis v. State*, 328 Ga. App. 796, 797-98 (1) (760 SE2d 728) (2014) (punctuation omitted); *see Graham v. State*, 275 Ga. 290, 292 (2) (565 SE2d 467) (2002) (noting that whether venue has been properly proved is a question of fact for the jury).

11

Notwithstanding the foregoing testimony, Howard argues that because both victims conceded that they were not familiar with the area where their assailant took them, the State failed to prove venue. But as previously noted, the State may prove venue through circumstantial evidence.[19] And the testimony from the camper and detective certainly constituted circumstantial evidence that the crimes occurred in Bibb County.[20] Moreover, there was no evidence presented that "any incident related to the crime took place outside of [Bibb] County."[21] Accordingly, the evidence here was sufficient for the jury to conclude beyond a reasonable doubt that venue for the crimes was in Bibb County.[22]

---

[19] *Walton*, 293 Ga. at 609 (2).

[20] *See O'Donnell v. Smith*, 294 Ga. 307, 311-12 (2) (a) (751 SE2d 324) (2013) (finding proof of venue sufficient when the "jury heard testimony that the victim was found lying down and injured in Fulton County").

[21] *Id.* at 312 (2) (a).

[22] *See id.* at 311-12 (2) (a) (holding that State proved venue for murder when victim's body was found in Fulton County and scene of stabbing appeared to be 100 yards from where body was found). *Compare Jones*, 272 Ga. at 903-04 (3) (finding that State failed to prove venue when only evidence presented was that murder victim's neighbor's home—across the street from victim's home—was in Fulton County). We note that although the case has not been overruled, the logic in *Jones* has been called into question. *See O'Donnell*, 294 Ga. at 313-14 (Nahmias, J., concurring) (opining that, in the absence of evidence to the contrary, jurors can very reasonably infer that a location within 100 yards of a location in a particular county

12

3. Finally, Howard also contends that the trial court erred in denying his claims of ineffective assistance of counsel. Once again, we disagree.

In order to prevail on his claim of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[23] which requires Howard to show that his trial counsel's performance was "deficient and that the deficient performance so prejudiced [him] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[24] In addition, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[25] Unless clearly erroneous, this Court will uphold a trial court's factual determinations with respect to claims of ineffective assistance of

is in the same county and that *Jones* should be overruled if its erroneous logic would result in a conviction being reversed due to purportedly insufficient proof of venue).

[23] 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

[24] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland*, 466 U.S. at 687 (III); *Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

[25] *Chapman*, 273 Ga. at 350 (2); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

counsel; "however, a trial court's legal conclusions in this regard are reviewed *de novo*."[26] With these guiding principles in mind, we turn now to Howard's claims of ineffective assistance.

(a) *Failure to call witnesses.* During his motion for new trial, Howard argued that his trial counsel rendered ineffective assistance by failing to locate and call a host of witnesses. But on appeal, Howard argues only generally that this failure to locate and call witnesses constituted ineffective assistance. In fact, on appeal, he references no specific witnesses who should have been called and does not even argue how trial counsel's alleged failure to call these unnamed witnesses affected the outcome of his trial. Suffice it to say, merely alleging that counsel provided ineffective assistance, without more, is "insufficient to establish a claim of ineffective assistance of counsel."[27] Moreover, under the rules of this Court, an appellant must support enumerations of error with argument and citation of authority,[28] and "mere conclusory

---

[26] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014).

[27] *Tyner v. State*, 313 Ga. App. 557, 565 (6) (b) (722 SE2d 177) (2012) (punctuation omitted); *see Brewer v. State*, 280 Ga. 18, 20-21 (3) (622 SE2d 348) (2005) (holding that defendant's mere allegations of ineffective assistance were insufficient to prevail on such a claim).

[28] *See* Court of Appeals Rule 25 (c) (2) (providing that "[a]ny enumeration of error which is not supported in the brief by citation of authority or argument may be

14

statements are not the type of meaningful argument contemplated by our rules."[29] Thus, Howard's arguments in this regard have been abandoned.[30]

Nevertheless, we will address trial counsel's failure to call the two witnesses, who seemed to be the focus of Howard's arguments during the hearing on the motion for new trial. Specifically, Howard claimed that trial counsel rendered ineffective assistance by failing to locate a woman named Patricia, who along with her cousin, Howard claims left the unlicensed bar with him on the night in question and was with him for much of that evening. Additionally, Howard argued that trial counsel was ineffective by failing to call his girlfriend, Valerie Goins, who would have testified that Howard was home with her by 12:30 a.m. on the night in question.

In considering this argument, we first note that the decision on which defense witnesses will be called is "a matter of trial strategy and tactics and does not usually

deemed abandoned").

[29] *Brittain v. State*, 329 Ga. App. 689, 704 (4) (a) (766 SE2d 106) (2014) (punctuation omitted).

[30] *See Brewer*, 280 Ga. at 20-21 (3) (holding that defendant's mere allegations of ineffective assistance were insufficient to prevail on such a claim); *Brittain*, 329 Ga. App. at 704 (4) (a) (holding that defendant abandoned majority of his ineffective assistance claims by making only conclusory arguments and failing to support such argument with citations to authority).

constitute ineffective assistance of counsel."[31] Indeed, which witnesses to call and all other strategies and tactical decisions are "the exclusive province of the lawyer after consultation with his client, and whether an attorney's trial tactics are reasonable is a question of law, not fact."[32]

Turning to the specific witnesses at issue, with regard to Patricia, trial counsel testified that Howard only knew her first name and believed that she had attended Crandall College. Based on this information, trial counsel searched the college's records, but was unable to find Patricia. But given Howard's lack of sufficient information regarding this alleged witness's full name, her whereabouts, or how to find her, trial counsel's failure to locate her certainly did not constitute ineffective assistance.[33]

---

[31] *Tyner*, 313 Ga. App. at 564 (6) (a) (punctuation omitted); *see Perdue v. State*, 298 Ga. 841, 845 (3) (785 SE2d 291) (2016) (noting that it is well established that the decision as to which defense witnesses to call is a matter of trial strategy and tactics).

[32] *Tyner*, 313 Ga. App. at 564 (6) (a) (punctuation omitted).

[33] *See Mattox v. State*, 305 Ga. App. 600, 606 (3) (699 SE2d 887) (2010) (holding that trial counsel's inability to locate witness did not constitute ineffective assistance when defendant only knew witness's first name and the apartment complex where he believed the witness lived).

With regard to Valerie Goins, trial counsel testified that he decided not to call her as a witness because she would have testified that Howard returned home that night around 12:30 a.m., which was inconsistent with the statement Howard provided to law enforcement about being with Patricia and her cousin all night. As previously noted, the determination as to which defense witnesses will be called is "purely a matter of trial strategy and tactics, and trial strategy and tactics do not equate with ineffective assistance of counsel."[34] And given trial counsel's reasonable explanation for his strategy here, his decision to not call Goins as a witness certainly did not render his assistance ineffective.[35]

(b) *Failure to adequately prepare.* Howard also generally contends that his trial counsel rendered ineffective assistance by not spending enough time meeting with witnesses prior to trial. But trial counsel's testimony during the hearing on the motion

---

[34] *Davenport v. State*, 308 Ga. App. 140, 154 (2) (b) (706 SE2d 757) (2011) (punctuation omitted); *see Perdue*, 298 Ga. at 845 (noting that it is well established that the decision as to which defense witnesses to call is a matter of trial strategy and tactics).

[35] *See Moss v. State*, 298 Ga. 613, 619 (5) (d) (783 SE2d 652) (2016) (holding that given trial counsel's concerns about witness's credibility and status as a felon, his decision not to call witness was reasonable); *Davenport*, 308 Ga. App. at 154 (2) (b) (holding that trial counsel did not render ineffective assistance in failing to call witness given counsel's testimony that he determined witness would not be favorable for defendant).

for new trial, in which he discussed the fact that he spoke with all the witnesses and potential witnesses, except for the victims, who refused to speak with him, belies this contention. Accordingly, there is no basis for finding that Howard's trial counsel provided ineffective assistance in this regard.[36]

(c) *Failure to make objections.* Finally, Howard argues—again only very generally—that his trial counsel rendered ineffective assistance by failing to object when the State's prosecutor employed leading questions during the direct examination of the State's witnesses, including the victims. Putting aside the fact that Howard fails to specifically identify the objectionable leading questions on appeal,[37] he never questioned his trial counsel during the hearing on his motion for new trial about the alleged failure to object to these non-descript questions. And in the absence

---

[36] *See Rice v. State*, 292 Ga. 191, 209 (9) (d) (733 SE2d 755) (2012) (finding that contrary to defendant's claim, trial counsel did investigate case by consulting with a computer expert on certain issues, and therefore, trial counsel did not render ineffective assistance in this regard); *Gadson v. State*, 252 Ga. App. 347, 352 (11) (c) (556 SE2d 449) (2001) (holding that defendant failed to show that his trial counsel provided ineffective assistance by failing to adequately investigate the case because record demonstrated that counsel did in fact prepare for trial and interview witnesses).

[37] *See supra* note 30; *see also Maxwell v. State*, 290 Ga. 574, 575 (2) (722 SE2d 763) (2012) (holding that defendant's conclusory allegation that trial counsel failed to object to leading questions without specifying such instances did not support a claim for ineffective assistance of counsel).

of evidence to the contrary, "counsel's decisions are presumed to be strategic and thus insufficient to support an ineffective assistance of counsel claim."[38] Indeed, the decision not to object to leading questions is "often the result of reasonable trial strategy."[39] And given that Howard has not made a contrary showing in this regard, he has failed to demonstrate that his trial counsel performed deficiently.[40]

For all of the foregoing reasons, we affirm Howard's convictions and the denial of his motion for new trial.

*Judgment affirmed. Reese and Bethel, JJ., concur.*

---

[38] *Mitchell v. State*, 290 Ga. 490, 492 (4) (a) (722 SE2d 705) (2012) (punctuation omitted).

[39] *Id.*

[40] *See id.* (holding that defendant failed to show that his trial counsel rendered ineffective assistance by not objecting to the State's leading questions when there was no evidence that such failure was not based on trial strategy).