**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

June 19, 2018

# In the Court of Appeals of Georgia

A18A0487. DUNCAN v. THE STATE.

DILLARD, Chief Judge.

Alfred Duncan appeals his convictions for possession of methamphetamine, possession of methamphetamine with intent to distribute, two counts of possession of drug-related objects, and possession of a firearm by a convicted felon. Specifically, Duncan argues that (1) there was insufficient evidence to support his drug convictions; (2) his trial counsel was ineffective for failing to file a motion to suppress evidence; (3) the trial court erred in denying his post-trial motion for fingerprint testing; and (4) the trial court erred by denying his motion for a directed verdict as to the firearm-related conviction because there was a fatal variance between the offense alleged in the indictment and the proof presented at trial. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that on May 5, 2014, Amy Johnson and her boyfriend went to Duncan's house around noon to go fishing. At some point, Johnson's boyfriend left, and she went inside Duncan's home. Johnson's boyfriend did not return that day, and because Duncan refused to give Johnson a ride or let her use his phone, she was forced to stay the night. While Johnson was there, Duncan entered the room where she was staying, along with two other people,[2] and asked her to have sexual intercourse or oral sex with him, but she refused. Although Johnson tried to leave several times, Duncan told her that she "wasn't going anywhere." And later that evening, Duncan came into Johnson's room again, waving a gun and saying "something about sexual favors." On May 7, 2014, two days after Johnson first arrived at Duncan's home, she escaped and ran to a friend's house while he was in the shower.[3] Johnson told her friend and his

---

[1] *See, e.g.*, *Hartzler v. State*, 332 Ga. App. 674, 675 (774 SE2d 738) (2015).

[2] Hannah Griffin testified that, during the relevant time period (in early May 2014), she and her boyfriend, Michael Brown, visited Duncan's house, where she saw "a girl" she did not know. And although Griffin had no interaction with the girl at the time, she recognized Johnson at trial as the person she had seen. According to Griffin, Brown and Duncan were friends, and they went to Duncan's house because the two men "had some drug business going on."

[3] Johnson's testimony was not entirely clear as to how many days and nights she spent at Duncan's house. According to Johnson, her days were "running

2

son about the ordeal and requested a ride home, where she lived with her boyfriend and his parents. They agreed, and once she arrived home, Johnson called 911 to report the incident. A sheriff's deputy responded to the call and escorted Johnson to the sheriff's department for questioning.

After interviewing Johnson, law-enforcement officers went to Duncan's residence to investigate further. Once they arrived, the officers knocked on the door and announced that they were from the sheriff's department, but initially, there was no response. Through a window, the officers saw doors being closed and heard movement in the house like "people were shuffling around," which led them to believe that someone was home. For this reason, they continued to knock on the door and yell "Sheriff's Office[,] loud and clear." Eventually, about 20 minutes after the officers arrived, Duncan answered the door, but he refused to consent to a search of his home. As a result, the officers obtained a warrant to search Duncan's home for the handgun described by Johnson. And during the search, they found a Crown Royal bag that contained a silver flask or margarita shaker, two small baggies of what appeared

---

together," the entire experience felt "like one big long day[,]" and she could not recall the particular dates. But other witness testimony established that Johnson went to Duncan's house on May 5, 2014, spent two nights there, and escaped the house on May 7, 2014.

to be methamphetamine, another small bag with what appeared to be methamphetamine residue, a "meth pipe[,]" and a digital scale. Given this discovery, the officers sought a second warrant to search for other drugs and drug paraphernalia, but no other drugs were found. But while waiting on the second warrant, the other officers continued searching for the firearm, which they eventually found "in a big box by the front door . . ." that also contained "a bunch of electronics that had been taken apart." The contents of the Crown Royal bag were then sent to the crime lab for testing, and just as the officers suspected, the substance inside the small baggies tested positive for methamphetamine.

Thereafter, Duncan was charged with false imprisonment, possession of methamphetamine with intent to distribute, possession of methamphetamine, theft by receiving stolen property, possession of a firearm by a convicted felon, and two counts of possession of drug-related objects.[4] And following a jury trial, Duncan was convicted of the foregoing drug-and-firearm offenses, but found not guilty of false imprisonment and theft by receiving stolen property. Duncan filed a motion for a new

---

[4] Duncan was also charged with two counts of aggravated assault, but the trial court granted him a directed verdict of acquittal as to those charges.

trial and a post-trial motion for independent fingerprint testing of certain evidence, but after a hearing, the court denied both motions. This appeal follows.[5]

1. Duncan first argues that the trial court erred in denying his motion for a directed verdict as to all of the drug-related charges because there was insufficient evidence to support his convictions for those offenses. We disagree.[6]

---

[5] This is the second time Duncan has appealed his convictions. We dismissed his first appeal because he failed to file an appellate brief, even after we ordered him to do so on or before a specified date. He then sought permission to file an out-of-time brief, but we denied that request because he had not shown good cause for his failure to comply with our order. Nevertheless, in the dismissal order, we advised Duncan that he might have the right to an out-of-time appeal, but he would have to request one in the trial court. Subsequently, Duncan filed a motion for an out-of-time appeal in the trial court, which was granted, resulting in the instant appeal.

[6] As to his first claim of error, in the argument section of his appellate brief, Duncan makes cursory assertions about the evidence presented at trial, without citing to the record or any legal authority. Under such circumstances, we have held that a challenge to the sufficiency of the evidence to support a conviction was either waived or abandoned. *See McBee v. State*, 296 Ga. App. 42, 46 (2) (b) (673 SE2d 569) (2009) (holding that defendant waived any challenges to the sufficiency of the evidence as to two of his convictions because he failed to support them with cogent argument or citation of authority); *Hudson v. State*, 246 Ga. App. 335, 335 (1) (539 SE2d 860) (2000) (holding that defendant's challenges to the sufficiency of the evidence presented at trial were abandoned due to his failure to include a statement of facts in the appellate brief and to cite to, or even mention, any relevant facts in the argument section of that brief). As explained by the Supreme Court of Georgia, "[i]t is a sound rule of appellate practice that the burden is always on the appellant in asserting error to show it affirmatively by the record," and "[i]t is not this Court's job to cull the record on behalf of the party to find alleged errors." *Westmoreland v. State*, 287 Ga. 688, 696 (10) (699 SE2d 13) (2010) (punctuation omitted). Nevertheless, because this

When a criminal conviction is appealed, the evidence must be viewed "in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence."[7] And, of course, in evaluating the sufficiency of the evidence, we do not "weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[8] Thus, we will uphold a jury's verdict so long as there is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[9] Bearing these guiding principles in mind, we turn now to Duncan's specific challenge to the sufficiency of the evidence supporting his convictions.

Duncan argues that there is insufficient evidence to establish that he was in actual or constructive possession of the Crown Royal bag, which contained the

---

is a criminal case, and given the relatively straightforward nature of the evidence before us, we have reviewed the merits of his challenge to the sufficiency of the evidence to support his convictions.

[7] *Hartzler*, 332 Ga. App. at 676 (1) (punctuation omitted); *see Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[8] *Hartzler*, 332 Ga. App. at 676 (1) (punctuation omitted).

[9] *Id.* (punctuation omitted).

methamphetamine and related paraphernalia.[10] It is well established that "possession of drugs can be actual or constructive, sole or joint."[11] And a person has actual possession of a thing if "he or she knowingly has direct physical control of it at a given time."[12] On the other hand, a person who, though not in actual possession, "knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it."[13] Generally, a finding of constructive possession "cannot rest [solely] upon the person's spatial proximity to

---

[10] Possession is an essential element of each of Duncan's drug-related convictions. *See* OCGA § 16-13-30 (a) ("[I]t is unlawful for any person to purchase, possess, or have under his or her control any controlled substance."); OCGA § 16-13-30 (b) ("[I]t is unlawful for any person to . . . possess with intent to distribute any controlled substance); OCGA § 16-13-32.2 ("It shall be unlawful for any person to use, or possess with the intent to use, any object or materials of any kind for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body marijuana or a controlled substance.").

[11] *Jones v. State*, 339 Ga. App. 95, 97 (1) (a) (791 SE2d 625) (2016) (punctuation omitted); *accord Maddox v. State*, 322 Ga. App. 811, 812 (746 SE2d 280) (2013).

[12] *Jones*, 339 Ga. App. at 97-98 (1) (a) (punctuation omitted); *accord Maddox*, 322 Ga. App. at 812.

[13] *Jones*, 339 Ga. App. at 98 (1) (a) (punctuation omitted); *accord Maddox*, 322 Ga. App. at 812.

the object."[14] Nevertheless, if the State presents evidence that a defendant owned or controlled premises where contraband was found, "it gives rise to a rebuttable presumption that the defendant possessed the contraband."[15] And while this presumption may be rebutted by showing that others had access to the premises, the equal-access doctrine "applies to rebut the presumption of possession only where the *sole* evidence of possession of contraband found on the premises is the defendant's ownership or possession of the premises."[16] Significantly, however, so long as there is "slight evidence of access, power, and intention to exercise control or dominion

---

[14] *Feliciano v. State*, 302 Ga. App. 328, 330 (690 SE2d 680) (2010); *see Hodges v. State*, 277 Ga. App. 174, 174 (626 SE2d 133) (2006) ("A finding of constructive possession must be based upon some connection between the defendant and the contraband other than spatial proximity. Evidence of mere presence at the scene of the crime, and nothing more to show participation of a defendant in the illegal act, is insufficient to support a conviction." (punctuation omitted)).

[15] *Bailey v. State*, 294 Ga. App. 437, 339-40 (1) (669 SE2d 453) (2008) (punctuation omitted); *see Taylor v. State*, 303 Ga. App. 88, 90 (693 SE2d 118) (2010) ("While it is true that ownership of the premises does not raise a presumption that the owner possessed all property contained therein, once the jury determined that [the defendant] lived in the residence in question, it could infer that the contraband found inside belonged to him." (punctuation and citation omitted)).

[16] *Bailey*, 294 Ga. App. at 440 (1) (punctuation omitted); *accord Taylor*, 303 Ga. App. at 90-91.

over an instrumentality, the question of fact regarding constructive possession remains within the domain of the trier of fact."[17]

Here, the State presented ample evidence of Duncan's constructive possession of the methamphetamine and drug paraphernalia found inside the Crown Royal bag. To begin with, the contraband was found in Duncan's residence, which authorizes a jury to presume that he possessed it. Second, Griffin testified that Duncan and Brown had a "drug business going on." Griffin further testified that both Duncan and Brown "smoked meth," and when asked where the drugs came from, she stated that they "were selling it together." And this testimony was consistent with that of a law-enforcement officer, who had experience in narcotics and testified that the items contained in the Crown Royal bag, such as separate baggies and a digital scale, show an intent to distribute drugs. Finally, when law-enforcement officers knocked on Duncan's door and repeatedly announced their presence, his suspicious behavior also evinced a connection between himself and the illegal contraband. Indeed, as

---

[17] *Prather v. State*, 293 Ga. App. 312, 313 (1) (667 SE2d 113) (2008) (punctuation omitted); *accord Bailey*, 294 Ga. App. at 440 (1).

previously noted, Duncan refused to answer the door for about 20 minutes, during which time the officers heard people inside "shuffling around."[18]

Duncan's sole argument appears to be that the evidence was insufficient to establish that he possessed the Crown Royal bag because the State failed to prove that it did *not* belong to Brown, who fled the scene after the law-enforcement officers arrived. Without providing citations to any specific testimony or other evidence, Duncan maintains that, other than the discovery of the contraband in his home, the only evidence the State presented to establish his possession of the Crown Royal bag was Griffin's testimony that "everybody had been doing/smoking meth and that both Brown and Duncan kept their methamphetamine in Crown Royal bags."[19] At trial,

_____

[18] *See Vines v. State*, 296 Ga. App. 543, 545-46 (1) (675 SE2d 260) (2009) (holding that the odor of marijuana combined with, *inter alia*, the defendant's suspicious, nervous behavior was sufficient to establish the defendant's constructive possession of the drugs); *Marshall v. State*, 295 Ga. App. 354, 355 (671 SE2d 860) (2008) (holding that the defendant's constructive possession of the drugs was established, in part, by his suspicious behavior in fleeing to the room where the drugs were located after police officers entered his apartment).

[19] Even if the evidence established that Duncan and Brown both had equal access to and control over the Crown Royal bag, the State can "establish the element of possession by showing that [Duncan] was in *joint* constructive possession of the contraband." *Edwards v. State*, 306 Ga. App. 713, 716 (703 SE2d 130) (2010) (emphasis supplied); *see In the Interest of D. H.*, 285 Ga. 51, 52 (1) (673 SE2d 191) (2009) ("Joint constructive possession with another will sustain [a conviction] for possession of contraband." (punctuation omitted)); *Waters v. State*, 280 Ga. App. 566,

Duncan testified in his own defense that Brown fled his home when the officers arrived, that Brown owned the Crown Royal bag containing the contraband, and that Duncan had never seen the bag before law-enforcement officers discovered it. But although Duncan denied any knowledge of the contraband, the jury was "not obligated to believe [him] even if [his] testimony is uncontradicted and may accept or reject any portion of the testimony."[20] Furthermore, contrary to Duncan's argument, the State "is not required to disprove bare possibilities that the crime could have been committed by someone else."[21] In sum, given Duncan's failure to rebut the

---

567 (634 SE2d 508) (2006) (same).

[20] *State v. Starks*, 281 Ga. App. 15, 16 (635 SE2d 327) (2006); *see Tate v. State*, 264 Ga. 53, 56 (3) (440 SE2d 646) (1994) ("Credibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact. The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony."); *State v. Brown*, 278 Ga. App. 457, 460 (629 SE2d 123) (2006) (same).

[21] *Nangreave v. State*, 318 Ga. App. 437, 439 (1) (734 SE2d 203) (2012); *see Eason v. State*, 217 Ga. 831, 842 (4) (125 SE2d 488) (1962) ("It [is] not necessary [for the State] to show that it was impossible for the offense to have been committed by anybody else, or that it might not, by bare possibility, have been done by another." (punctuation omitted)); *Prather*, 293 Ga. App. at 313 (1) ("[T]o warrant a conviction on circumstantial evidence, the proved facts need exclude only *reasonable* hypotheses—not bare possibilities that the crime could have been committed by someone else. And questions of reasonableness are generally decided by the jury." (punctuation omitted)).

11

presumption that he was in possession of the contraband found in his home, combined with the other evidence detailed *supra*, the jury was authorized to find that he was in constructive possession of the drugs and drug-related objects contained in the Crown Royal bag.[22]

2. Duncan next argues that his trial counsel was ineffective for failing to file a motion to suppress the drugs and drug-related objects found during the search of his home. Again, we disagree.

In evaluating claims of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[23] "which requires [a defendant]

---

[22] *See Evans v. State*, 318 Ga. App. 706, 711-12 (2) (734 SE2d 527) (2012) (holding that the presumption the defendant possessed the contraband found inside his residence, coupled with evidence that the he was "banging" on the door of the particular room where it was found, his attempt to flee from police, and his refusal to admit police into the house, was sufficient to support his possession conviction); *Taylor*, 303 Ga. App. at 90-91 (holding that there was sufficient evidence to establish the defendant had actual or constructive possession of drugs when the defendant lived in the residence where the drugs were found and sold drugs from the residence); *Turner v. State*, 298 Ga. App. 107, 109 (679 SE2d 127) (2009) (holding that the jury could presume the defendant had access and control over area where the drugs were located when he resided at the home and it was up to the jury to determine whether this presumption was overcome by the defendant's testimony that the drugs belonged to other people who were at the house shortly before the search).

[23] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984); *see also Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

to show that his trial counsel's performance was deficient and that the deficient performance so prejudiced [him] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[24] Additionally, there is a strong presumption that trial counsel's conduct "falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption."[25] Particularly relevant to this case, "when trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion."[26] Lastly, unless clearly erroneous, we will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de*

---

[24] *Howard v. State*, 340 Ga. App. 133, 139 (3) (796 SE2d 757) (2017) (punctuation omitted); *see Strickland*, 466 U.S. at 687 (III); *Ashmid*, 316 Ga. App. at 556 (3).

[25] *Howard*, 340 Ga. App. at 139 (3); *accord Chapman v. State*, 273 Ga. 348, 350 (2) (541 SE2d 634) (2001); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[26] *Davis v. State*, 267 Ga. App. 245, 246 (2) (599 SE2d 237) (2004) (punctuation omitted).

13

*novo*."[27] With these guiding principles in mind, we will now consider this claim of error.

Duncan argues that his trial counsel was ineffective for failing to file a motion to suppress the drugs and drug-related evidence because the search of the Crown Royal bag exceeded the scope of the initial warrant, which only authorized the officers to search for a firearm. According to Duncan, the contents of the Crown Royal bag were not readily apparent, and anyone picking up the bag, which contained lightweight items, would have known that it did not contain a firearm. But we have held in similar circumstances that police officers were authorized to search a small "Crown Royal" fabric bag for a firearm when only drugs and drug-related paraphernalia were ultimately found inside the bag.[28] Furthermore, as previously mentioned, Duncan testified in his own defense, denying any knowledge of the Crown Royal bag and contending that Brown owned the bag and its contents. Under such circumstances, Duncan had no legitimate expectation of privacy in that item, and

---

[27] *Howard*, 340 Ga. App. at 139 (3) (punctuation omitted); *accord Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014).

[28] *See e.g.*, *Wade v. State*, 184 Ga. App. 97, 97-98 (360 SE2d 647) (1987).

thus, he lacked standing to challenge the search.[29] Indeed, at the motion-for-new-trial hearing, Duncan's trial counsel testified that he had no concerns about the constitutionality of the search. And given that Duncan lacked standing to challenge the search of the Crown Royal bag, his counsel was not ineffective for failing to file a meritless motion to suppress the drug-related evidenced discovered in the bag.[30]

---

[29] *See Nation v. State*, 252 Ga. App. 620, 623 (2) (556 SE2d 196) (2001) (holding that when a defendant disavows ownership of or other legitimate possessory interest in the item searched, he has no legitimate expectation of privacy in that item, the search violates no legal right, and the defendant lacks standing to challenge the search); *Scandrett v. State*, 244 Ga. App. 200, 201 (534 SE2d 908) (2000) ("[W]hen the accused disavows ownership of or other legitimate possessory interest in the item searched, he has no legitimate expectation of privacy in that item, and thus a search violates no right." (punctuation omitted); *Wade*, 184 Ga. App. at 97-98 (same); *see also Thomas v. State*, 274 Ga. 156, 159 (3) 549 SE2d 359) (2001) ("When an individual has no ownership or possessory interest in the premises, the individual has no expectation of privacy, and therefore, lacks standing to challenge the validity of a search.").

[30] *See Lockheart v. State*, 284 Ga. 78, 80 (3) (663 SE2d 213) (2008) (holding that defense counsel's failure to file a meritless motion to suppress evidence did not amount to ineffective assistance); *Scott v. State*, 298 Ga. App. 376, 380 (4) (a) (680 SE2d 482) (2009) (noting that a trial counsel is not deficient for failing to file a frivolous motion and holding that the defendant's counsel was not ineffective for failing to file a motion to suppress evidence when the defendant had no standing to challenge the legality of the search); *King v. State*, 287 Ga. App. 375, 377 (2) (a) (651 SE2d 496) (2007) ("It is not ineffective assistance of counsel to refrain from making a futile motion or filing a meritless motion to suppress." (punctuation omitted)).

15

3. Duncan next argues that the trial court abused its discretion in denying his post-trial motion for fingerprint testing, which was necessary to support one of his ineffective-assistance-of-counsel claims. But Duncan has provided no legal authority (and we have found none) suggesting that a trial court abuses its discretion by denying a *post*-trial request for forensic testing of evidence, and thus, he has abandoned his challenge to the trial court's ruling in this regard.[31]

---

[31] *See Blanton v. State*, 324 Ga. App. 610, 615 (2) (a) n.10 (751 SE2d 431) (2013) (finding that appellant abandoned a claim by failing to cite any authority to support it); *Clarke v. State*, 317 Ga. App. 471, 475 (1) (d) (731 SE2d 100) (2012) (holding that argument was waived by appellant's failure to cite legal authority in support thereof); Court of Appeals R. 25 (c) (2) ("Any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned."). The sole witness at the motion-for-new-trial hearing, Duncan's trial counsel, testified that he did not request fingerprint testing because "there were law[-] enforcement people all around handling stuff." Counsel also testified that, based on his experience, it is difficult to lift fingerprints from cloth, such as the Crown Royal bag. And Duncan presented no testimony or other evidence at the motion-for-new-trial hearing to show that fingerprint testing of any particular piece of evidence, either prior to trial or at this late stage in the proceeding, would produce any exculpatory evidence that could have aided in his defense. *See Moody v. State*, 277 Ga. 676, 681 (6) (a) (594 SE2d 350) (2004) (holding that, when the appellant did not offer what exculpatory evidence an investigator might have found or results a scientific analysis would have shown, he did not show he was prejudiced by his counsel's action in failing to hire an investigator or obtain a scientific analysis); *Butts v. State*, 279 Ga. App. 28, 30 (2) (630 SE2d 182) (2006) (holding that trial counsel was not ineffective for failing to obtain certain forensic evidence, such as fingerprint testing, when the defendant failed to show that any such evidence existed or would have tended to exculpate him). Thus, to the extent that Duncan contends that his trial counsel was ineffective for not requesting the fingerprint testing prior to trial, his claim lacks

16

4. Lastly, Duncan contends that the trial court erred in finding that there was no fatal variance between the count of the indictment charging him with possession of a firearm by a convicted felon and the evidence presented at trial. Specifically, he notes that the indictment identified his prior felony conviction as one for possession of a firearm by a convicted felon, but at trial, the State presented evidence that his prior felony convictions were drug offenses and theft by receiving stolen property. Then, at the conclusion of trial, Duncan moved for a directed verdict as to the firearm-related count on this basis, but the motion was denied.

To the extent that Duncan has not abandoned this claim by, yet again, failing to provide any legal authority to support it,[32] we agree with the trial court that he was not entitled to a directed verdict as to the firearm charge. As explained by the Supreme Court of Georgia, "[o]ur courts no longer employ an overly technical application of the fatal variance rule, focusing instead on materiality."[33] Thus, the true

merit.

[32] *See supra* notes 6 and 31.

[33] *Roscoe v. State*, 288 Ga. 775, 776 (3) (707 SE2d 90) (2011) (punctuation omitted); *accord Delacruz v. State*, 280 Ga. 392, 396 (3) (627 SE2d 579) (2006).

17

inquiry is "not whether there has been a variance in proof, but whether there has been

such a variance as to affect the substantial rights of the accused."[34] Further,

> [i]t is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense.[35]

And only if the allegations "fail to meet these tests is the variance fatal."[36]

Applying this standard to circumstances materially indistinguishable from this

case, our Supreme Court previously held that, in the absence of proof that the

defendant's rights were affected, there is no fatal variance when an indictment

charged him with possession of a firearm by a convicted felon predicated on one

felony, but the State presented proof of a different prior felony at trial.[37] As Duncan

---

[34] *Roscoe*, 288 Ga. at 776 (3) (punctuation omitted); *accord Delacruz*, 280 Ga. at 396 (3).

[35] *See Roscoe*, 288 Ga. at 776 (3) (punctuation omitted); *accord Delacruz*, 280 Ga. at 396 (3).

[36] *Roscoe*, 288 Ga. at 776 (3) (punctuation omitted); *accord Delacruz*, 280 Ga. at 396 (3).

[37] *See Roscoe*, 288 Ga. at 775-76 (3) (holding that there was no fatal variance when the indictment charged the defendant with possession of a firearm by a convicted felony based on a 1997 conviction for theft by taking, and at trial, the State

has failed to present any evidence that the alleged variance affected his rights, his argument on appeal is foreclosed by the foregoing precedent.

For all these reasons, we affirm Duncan's convictions.

*Judgment affirmed. Doyle, P. J., and Mercier, J., concur*.

---

presented evidence that he had a prior 2001 felony for possession of cocaine); *see also Miller v. State*, 283 Ga. 412, 416 (4) (a) (658 SE2d 765) (2008) ("[I]t is irrelevant to a charge under OCGA § 16-11-131(b) what felony formed the basis of the prior conviction, and specification of the underlying felony in the indictment is unnecessary.").