297 Ga. 32
FINAL COPY

S15A0396.  TORRES v. THE STATE.

HINES, Presiding Justice.

Following the denial of his motion for new trial, as amended, Abel Torres appeals his convictions of malice murder, aggravated assault, false imprisonment, and possession of a firearm during the commission of a felony in connection with the fatal shooting of Fernando Gonzalez, and the assaults with a handgun and unlawful detentions of Hector Manuel Romero-Aguirre and Luis Ernesto Garcia-Cantun.  Torres's sole challenge is that his trial counsel provided ineffective assistance by not pursuing a mental health defense.  For the reasons that follow, the challenge is without merit, and we affirm.[1]

---

[1]The crimes occurred on April 26, 2008.  On May 2, 2008, a Newton County grand jury returned a nine-count indictment against Torres: Count 1 –  malice murder of Gonzalez; Count 2 – felony murder of Gonzalez while in the commission of aggravated assault with a deadly weapon; Count 3 –  aggravated assault of Gonzalez with a deadly weapon; Count 4 –  aggravated assault of Romero-Aguirre with a deadly weapon; Count 5 –  aggravated assault of Garcia-Cantun with a deadly weapon; Count 6 –  false imprisonment of Romero-Aguirre; Count 7 –  false imprisonment of Garcia-Cantun; Count 8 –  possession of a firearm during the commission of the felony of murder; and Count 9 –  possession of a firearm during the commission of the felonies of the aggravated assaults and false imprisonments of Romero-Aguirre and Garcia-Cantun. Torres was tried before a jury August 29-31, 2011, and found guilty of all charges.  He was sentenced to life in prison on Count 1; 20 years in prison on Count 4, to be served consecutively to the sentence on Count 1; 20 years in prison on Count 5, to be served concurrently with the sentence on Count 4; 10 years in prison on Count 6, to be served consecutively to the sentence on Count 4; 10 years in prison on Count 7, to be served concurrently with the sentence on Count 6; 5 years in prison on Count 8, to

The evidence construed in favor of the verdicts showed the following. On April 26, 2008, Gonzalez was sharing his Newton County home with Torres, Romero-Aguirre, and Garcia-Cantun. Gonzalez, Romero-Aguirre, and Garcia-Cantun had bedrooms on the first floor, and Torres's bedroom was on the second floor. Torres was staying at the house rent free. Torres always carried a chrome revolver tucked into his belt and kept a box of ammunition in his bedroom. None of the other men used handguns, and Torres's revolver was the only weapon in the house.

Gonzalez was known to always carry $500-$600 in his wallet. A couple of days before April 26, 2008, Torres asked Gonzalez for money because Torres wanted to return to his family and he was not working and had no money of his own. Gonzalez told Torres that he did not have any money to give him.

All four men were home on April 26, 2008, and around midnight very

be served consecutively to the sentences on all counts; and 5 years in prison on Count 9, to be served concurrently with the sentence on Count 8. The verdict on Count 2 stood vacated by operation of law, and that on Count 3 merged for the purpose of sentencing. Trial counsel filed a motion for new trial on Torres's behalf on October 4, 2011, and amended the motion on January 25, 2013. A second amended motion for new trial on Torres's behalf was filed by new counsel on January 10, 2014. The motion for new trial, as amended, was denied on September 8, 2014. A notice of appeal was filed on September 26, 2014. The appeal was docketed in this Court's January 2015 term and submitted for decision on the briefs.

loud music was heard playing from a home theater in the living room; this was followed by a series of gunshots. Romero-Aguirre saw Torres leaving Gonzalez's bedroom; Torres had a pistol in his hand. Torres told Romero-Aguirre and Garcia-Cantun that they "shouldn't run," and at gunpoint ordered them to sit down on the couch in the living room. Romero-Aguirre asked Torres about Gonzalez, and Torres "coldly" responded that Gonzalez was dead because he had lied to him. Torres told the two men that they were going to go with him, and then ordered them to get into a truck in the garage. When Torres then went to the front of the house to shut the door, Romero-Aguirre and Garcia-Cantun escaped in the truck; however, they got lost in the subdivision and drove past the house again. Torres was in the front yard as they passed by and pointed the handgun at them. The two men drove to the interstate to try and find a police officer. They found an officer, reported the shooting, and gave the officer a black bag belonging to Torres that they found in the truck. The men were transported back to Newton County, where they directed officers to Gonzalez's home. Gonzalez's body was found on the floor of the master bedroom; there was a large amount of blood, and it appeared that Gonzalez had been shot in the head and shoulder. Next to the body were four spent shell casings and one live

unfired round. There was also a "wadded up" five-dollar bill, some change, and a wallet strewn around the room. Gonzalez had sustained five gunshot wounds, to his head, arm, and back; the cause of death was two gunshot wounds to the head.

In the early morning hours after the shooting, Torres was picked up by a taxi cab driver and the driver's girlfriend, and Torres asked to be taken to the bus station in Atlanta. Torres agreed to pay the $65 fare, and on the way to the bus station, he asked the couple to stop at a store and get him a bottle of water and a pre-paid mobile phone card. During the drive, Torres instructed the couple not to turn around and look at him. Torres asked the girlfriend if he would be asked for identification in order to purchase the bus ticket. Once at the bus station, Torres requested that the driver buy him a bus ticket, explaining that he did not have any identification. Torres gave the driver money to purchase for him a ticket to California, which the driver did. The bus ticket cost about $300. Torres also paid for the cab ride and gave the driver a $260 tip. After law enforcement officials determined that Torres was on a particular bus, Torres was detained at the bus's layover in Birmingham, Alabama. Blood was found on the pants Torres was wearing when he was apprehended, and a subsequent DNA

examination of the blood revealed that it contained Gonzalez's DNA profile.

1. Torres has not enumerated as error that the evidence at trial was insufficient to sustain his convictions; nevertheless, this Court has reviewed the evidence and finds that it was sufficient to enable a rational trier of fact to find Torres guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Torres contends that his trial counsel was ineffective because counsel "unreasonably eschewed a mental health defense, in light of [his] documented history of mental health related problems."

In order to prevail on such claim, Torres must satisfy the standard set forth in *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), that is, that his counsel's performance was deficient and that, but for the deficiency, there is a reasonable probability of a more favorable outcome at trial. *Allen v. State*, 293 Ga. 626, 627(2) (748 SE2d 881) (2013). For Torres to meet the first prong of *Strickland*, he has to overcome the strong presumption that his trial counsel's performance fell within the wide range of reasonable professional conduct and that counsel's decisions were the result of reasonable professional

judgment, the reasonableness of which is judged from counsel's perspective at the time of trial and under the particular circumstances then existing in the case. Id. The second prong of *Strickland* requires that Torres show the reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. We are to accept the trial court's factual findings and determinations as to credibility unless they are clearly erroneous, but we independently apply the legal principles to the facts. Id.

Following the motion-for-new-trial hearing, at which trial counsel was the sole testifying witness, the superior court entered its order denying Torres a new trial after concluding that trial counsel was not deficient in failing to present a mental health defense, and that any alleged deficient performance by counsel did not so prejudice Torres that there was the reasonable likelihood that, but for such alleged errors, there would have been a different outcome at trial.

As a threshold matter, there is no dispute that Torres had some history of mental health problems. Indeed, following a court-ordered mental health evaluation and a report by Dr. Hughey, a consent order issued on September 22, 2009, finding Torres incompetent to stand trial. However, Torres's mental health was reevaluated on January 21, 2011, by a forensic psychiatrist, Dr.

6

Browning of Georgia Regional Hospital, who ultimately determined that Torres was then competent to stand trial and was criminally responsible at the time of his alleged commission of the murder and related crimes. In his report, Dr. Browning determined, inter alia, that although Torres was undoubtedly experiencing psychotic symptoms at the time of his admission to the hospital, it was unclear "if Schizophrenia is responsible or if Mr. Torres's fifteen year history of regular marijuana usage caused the psychosis that was evident at the time of his admission," and however, that it was clear that "Torres was faking at least some of his psychotic symptoms during his hospitalization." Following Dr. Browning's evaluation, Torres's trial counsel requested an independent examination to be conducted by Dr. Ryback in July 2011. After receipt of a draft of Dr. Ryback's report, which apparently contained the opinion that Torres was "not criminally responsible," the following morning trial counsel sent Dr. Ryback an e-mail informing him that a mental health defense would not be pursued in Torres's case.

Torres argues that trial counsel's apparent rapid rejection of Dr. Ryback's opinion suggests that counsel did not properly and adequately contemplate Dr. Ryback's findings and the possibility of a mental health defense, and that it was

objectively unreasonable that counsel would forgo such option when counsel's own expert provided exculpating information and the issue was abandoned without further exploration. But, that was not shown to be the case.

To begin with, Dr. Ryback's report was never admitted into evidence at the hearing on the motion for new trial, as amended, nor was Dr. Ryback called to testify. The sole witness was trial counsel who testified: she personally reviewed Torres's mental health evaluations from Georgia Regional Hospital and his subsequent evaluation by Dr. Ryback; the basis of Dr. Ryback's finding that Torres was not criminally responsible was his diagnosis of borderline mental retardation rather than any sort of compulsion on the part of Torres or an inability on the part of Torres to tell right from wrong; counsel did not pursue a defense based on Dr. Ryback's report because she believed that the report would not overcome the evaluations from Dr. Browning and other doctors at Georgia Regional Hospital inasmuch as they were based on extended observation of Torres, and as to Torres's criminal responsibility, the evaluations included reference to Torres's voluntary drug use as causing any delusions; such evaluations did not find that Torres was unable to tell right from wrong; counsel was concerned that a mental health defense would be undercut by evidence of

8

Torres's voluntary intoxication; she discussed possible defenses with Torres; and after consultation with Torres, it was decided that his defense would be that he did not commit the crimes, i.e., that either Romero-Aguirre or Garcia-Cantun killed Gonzalez.[2]

Torres failed to show that trial counsel's strategic choice not to pursue a mental health defense was deficient. *Strickland v. Washington*, supra. The superior court was entitled to credit trial counsel's uncontroverted testimony that Torres's defense was selected after consultation with Torres, and that Dr. Ryback's report would not have aided the defense. *Jimmerson v. State*, 289 Ga. 364, 368 (2) (a) (711 SE2d 660) (2011). A strategic choice which is made after thoughtful consideration will generally not support a claim of ineffective assistance of counsel. *Freeman v. State*, 295 Ga. 820, 825 (4) (764 SE2d 390) (2014). What is more, an insanity defense, or indeed, any mental health defense would have necessitated Torres admitting to committing the criminal acts; he could not simultaneously assert such a defense and a credible defense that he

---

[2] Following the murder, Romero-Aguirre and Garcia-Cantun went to Mexico. Romero-Aguirre came back to the United States to testify as a State's witness; Garcia-Cantun could not be located. At trial, the defense argued that the two men sought out police in order to frame Torres for the murder.

was not the perpetrator. *Boykins v. State*, 294 Ga. 277, 279 (2) (751 SE2d 811) (2013). The fact that in hindsight Torres now questions the efficacy of the chosen defense strategy does not establish ineffective assistance. *Jimmerson v. State*, supra at 368 (2) (a). Simply, there is no valid basis upon which to conclude that the strategic choice of a defense at trial fell below reasonable professional norms, and therefore, Torres's ineffectiveness claim must fail.[3] *Boykins v. State*, supra at 279 (2).

Judgments affirmed. All the Justices concur.


Decided April 20, 2015.

Murder. Newton Superior Court. Before Judge Johnson.

Long D. Vo, for appellant.

Layla H. Zon, District Attorney, Christopher D. Sperry, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ryan A. Kolb, Assistant Attorney General, for appellee.

---

[3] Inasmuch as Torres has failed to demonstrate the deficient performance of trial counsel, as required by *Strickland v. Washington*, it is unnecessary for this Court to examine the "prejudice" prong of the *Strickland* test. *Boykins v. State*, supra at 279 (2).