In the Supreme Court of Georgia

Decided: April 4, 2016

S16A0296. PERDUE v. THE STATE.

HINES, Presiding Justice.

Shawn Perdue appeals his conviction and sentence for malice murder and the denial of his motion for new trial, as amended, in connection with the death of his girlfriend's infant daughter, Kyliah Mack. He challenges the trial court's exercise of discretion in denying him a new trial and the effectiveness of his trial counsel. Finding the challenge to be without merit, we affirm.[1]

The evidence construed in favor of the verdicts showed the following. Around 9:00 a.m. on May 21, 2008, Lakeshia Goodwin asked Perdue, her live-in boyfriend, to watch her four-year-old daughter and her two-month-old

[1]The murder occurred on May 21, 2008. On February 3, 2009, a Richmond County grand jury returned a two-count indictment against Perdue charging him with malice murder and felony murder while in the commission of cruelty to children in the second degree, both counts charging that death occurred as the result of shaking the infant and causing blunt force trauma to her head. Perdue was tried before a jury June 1-3, 2009, and found guilty on both counts. On June 4, 2009, he was sentenced to life in prison for malice murder; the felony murder verdict stood vacated by operation of law. A motion for new trial was filed on June 8, 2009, and through new counsel, an amended motion for new trial was filed on May 8, 2013. The motion for new trial, as amended, was denied on May 17, 2013. A notice of appeal was filed on June 7, 2013, and the case was docketed in this Court's January 2016 term. The appeal was submitted for decision on the briefs.

daughter, Kyliah, at the home they shared in Richmond County. Perdue had been out celebrating his birthday late the night before, so Goodwin asked him multiple times if he would be okay to take care of the children, specifically to "keep the baby," and Perdue assured Goodwin that he would be fine. This was the first time that Perdue was watching the baby for longer than the short time it took Goodwin to take her eldest daughter to school. When Goodwin left, Kyliah was smiling and playing in her bed. Perdue was then the only adult in the home.

Sometime after Goodwin left, Kyliah would not stop crying, so Perdue held the infant under her arms and shook her with some force for three to five minutes and without supporting her head. Kyliah began to emit a low humming sound and then vomited, so Perdue, laid her back down. Around noon, Perdue went to his neighbor's house, and asked the neighbor for help because Kyliah was acting lethargic. The neighbor, who was training to be a nurse, ran over to check on the baby and found her in her crib, cool to the touch. She began to perform CPR on Kyliah, but she was unsuccessful and called 911. Perdue was visibly upset, and he struck the mailbox with his fist, stating "I'm going to jail." The neighbor initially believed that Kyliah had choked on milk because she saw

milk spilled on the floor of the home, and Perdue later told her that the baby must have choked on her milk.

Kyliah arrived at the hospital at 12:34 p.m.; she was not breathing and was without a heart rate. Her body temperature was 87 degrees Fahrenheit, indicating that she had been dead for some time. Perdue told the emergency room doctor that he had given Kyliah something to drink, left, and then came back five to ten minutes later to find her unresponsive. However, Perdue's story did not square with how long the infant had been dead, so the doctor contacted the coroner and the Richmond County Sheriff's Office. When law enforcement arrived, Perdue told them he sought help immediately when the baby became unresponsive.

Goodwin returned home around 12:00 p.m. or 1:00 p.m. and learned that Perdue was at the hospital because something was wrong with Kyliah. When Goodwin arrived at the hospital, the baby was already dead, and Perdue told Goodwin that she had choked on milk. An autopsy of Kyliah revealed blunt force trauma, hemorrhaging in her eyes and brain, and a fresh hemorrhage to her buttocks. The cause of her death was determined to be homicide by blunt force trauma to the head consistent with violent shaking.

3

1. The evidence was sufficient to enable a rational trier of fact to find Perdue guilty beyond a reasonable doubt of the malice murder of Kyliah Mack. *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Perdue's motion for new trial, as amended, challenged his conviction, inter alia, on the general grounds, see OCGA §§ 5-5-20[2] and 5-5-21[3], namely that the verdict of guilty was contrary to the evidence, without evidence to support it, decidedly and strongly against the weight of the evidence, and contrary to the law and principles of justice and equity. He further argued that regardless of whether the State proved his guilt beyond a reasonable doubt, the evidence was sufficiently close so as to warrant the trial court to exercise its discretion to grant a new trial. He now contends that the trial court failed to use the proper standard of review when it denied his motion for new trial on the

---

[2]OCGA § 5-5-20 provides:

> In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury.

[3]OCGA § 5-5-21 provides:

> The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding.

general grounds in that it did not exercise its discretion in deciding the motion for new trial and instead relied on the inappropriate "sufficiency of the evidence" standard.

It is certainly true that,

> [w]hen faced with a motion for new trial based on these general grounds, the trial court has the duty to exercise its discretion and weigh the evidence. The trial court does not exercise its discretion when it evaluates the general grounds by applying the standard of *Jackson v. Virginia*, . . . to a motion for new trial based on the general grounds embodied in OCGA §§ 5-5-20 and 5-5-21.

*Walker v. State*, 292 Ga. 262, 264 (2) (737 SE2d 311) (2013) (internal citations omitted). And, that when,

> the record reflects that the trial court applied an incorrect standard of review and, in so doing, failed to exercise its discretion and weigh the evidence in ruling on the merits of claims under OCGA §§ 5-5-20 and 5-5-21, the appellate court must vacate the judgment and remand the case to the trial court for consideration of the motion under the proper standard of review.

*Walker v. State*, supra at 264-265 (2) (internal citations omitted). But, that is not the situation in the present case.

At the motion-for-new trial hearing, the defense made plain that it was

asking the trial court to exercise its discretion in the context of the general grounds. And, while the trial court's order denying Perdue's motion for new trial, as amended, mentions the sufficiency of the evidence at trial, it does not do so in the context of *Jackson v. Virginia* , supra. Instead, it directly cites the trial court's personal observations of the witnesses and evidence at trial, and expressly acknowledges that Perdue had "moved this Court to act in its capacity as the thirteenth jury [sic]." The order further evidences the trial court's exercise of its discretion by its express ultimate determination that it "will not disturb the jury's verdict."[4] The trial court was aware of its responsibility as the "thirteenth juror" and it exercised its discretion accordingly.[5] Compare *Gomillion v. State*, 296 Ga. 678, 680 (2) (769 SE2d 914) (2015).

3. Lastly, Perdue contends that the trial court erred by not concluding

___

[4]As for Perdue's assertion in argument that the fact that the trial court announced its ruling from the bench at the conclusion of the hearing in the matter shows that the court would not have had time to conduct an independent review of the case, it is without merit. The judge hearing the motion for new trial, as amended, was the same judge who presided over the trial and heard all of the evidence. What is more, much of the evidence presented at trial was recounted during the motion-for-new trial hearing.

[5]To the extent that implicit in Perdue's argument is the claim that the trial court erred in not ordering a new trial based upon OCGA §§ 5-5-20 or 5-5-21, it should be noted that whether to grant a new trial under such circumstances is a matter solely in the discretion of the trial court. *Smith v. State*, 292 Ga. 316, 317 (1) (b) (737 SE2d 677) (2013). And, no abuse of that discretion has been shown.

6

that he received ineffective assistance of trial counsel when trial counsel knew of the need for expert witnesses and failed to call them due primarily to financial limitations. However, the contention is unavailing.

In order to prevail on his ineffectiveness claim, Perdue must meet the test of *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984), that is, that trial counsel's performance was deficient and that, but for such deficiency, a more favorable outcome at trial was reasonably probable. *Torres v. State,* 297 Ga. 32, 35 (2) (771 SE2d 894) (2015*).* In attempting to show deficient performance under *Strickland*, he has to overcome the strong presumption that trial counsel's performance was within what is a wide range of reasonable professional conduct and that the decisions made by counsel were the result of reasonable professional judgment, the reasonableness of which must be assessed from counsel's perspective at the time of trial and under the particular circumstances then in the case. Id. The second prong of prejudice under *Strickland* requires that Perdue demonstrate that it was reasonably probable that, absent such deficiencies on counsel's part, the result of his trial would have been different. Id. This Court is to accept the trial court's factual findings and determinations regarding credibility unless they are clearly

erroneous, but it is to independently apply the legal principles to the facts. Id.

Furthermore,

> [i]t is well established that the decision as to which defense witnesses to call is a matter of trial strategy and tactics. And tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances. In particular,[h]ow to deal with the presentation of an expert witness by the opposing side, including whether to present counter expert testimony, to rely upon cross-examination, to forego cross-examination and/or to forego development of certain expert opinion, is a matter of trial strategy which, if reasonable, cannot be the basis for a successful ineffective assistance of counsel claim.

*Brown v. State*, 292 Ga. 454, 456-457 (2) (738 SE2d 591) (2013) (quotation marks and internal cites omitted).

While at the motion-for-new-trial hearing, trial counsel did testify about the financial considerations and possible constraints in securing expert witnesses in regard to the medical issues in the case, counsel's testimony makes plain that counsel made a benefit analysis in that regard and determined that securing an expert would not be a useful expenditure of funds. Indeed, trial counsel testified that after consulting certain individuals who were considered experts in the matters at hand, "at the end of the day we did not believe that an expert would be able to assist us in the defense of this case." Thus, the ultimate decision not

to retain an expert in the case was based on trial counsel's professional opinion that hiring an expert would not be beneficial to the outcome of the case, that is, that it was a matter of tactics and trial strategy, which has not been shown to be unreasonable. Id. at 456-457 (2). What is more, on cross-examination trial counsel did elicit some testimony from the State's experts favorable to Perdue, including that the victim lacked some physical symptoms associated with shaken baby syndrome and that certain of her injuries could have resulted from being accidentally dropped. See *Gibson v. State*, 290 Ga. 6, 12 (6) (b) (717 SE2d 447) (2011).

Simply, Perdue has failed to show professional deficiency on the part of his trial counsel. Consequently, his claim of ineffectiveness must fail. *Strickland v. Washington*, supra.

Judgments affirmed. All the Justices concur.