**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 16, 2018**

# In the Court of Appeals of Georgia

A17A1857. GONZALES v. THE STATE.

MCFADDEN, Presiding Judge.

On appeal from his conviction for aggravated sexual battery and child molestation, Miguel Gonzales argues that his trial counsel was ineffective for failing to ask the victim's mother her opinion about the victim's truthfulness. We agree and we find that the deficient performance was prejudicial. So we reverse Gonzales's convictions. Because the evidence is legally sufficient to support the convictions, Gonzales may be retried. Accordingly, we address three issues that could occur upon retrial. We reject Gonzales's arguments that the trial court erred by refusing to allow counsel to ask the victim whether she always told the truth; by refusing to allow counsel to ask prospective jurors whether they believed Gonzales was guilty; and in instructing the jury.

1. *Facts.*

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004) (citation omitted). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

So viewed, the record shows that between 2004 and 2007, when the victim was between four and seven years old, she lived with her family and Gonzales. In the spring of 2007, Gonzales would often pick up the victim from elementary school and drive her to the family's apartment. On one occasion, Gonzales picked up the victim, took her home, and accompanied her into the bedroom, where the victim, her mother, her sister, and Gonzales routinely slept in the same bed. Once in the bedroom, Gonzales touched the victim's vagina through and then underneath her clothing. Unaware that Gonzales had picked up the victim from school on this day, the victim's mother called police. When the mother and the police arrived at the apartment, they

saw Gonzales's taxi outside. According to the victim, Gonzales stopped fondling her only when her mother and police knocked on the door of the apartment.

Gonzales soon moved out of the family's apartment, but remained on good terms with them, and would often pick the girls up, take them to his apartment, and help them with their homework. On one such occasion, Gonzales was on his bed with the two girls when he began taking off the victim's pants and underwear, eventually penetrating her vagina with his finger. Although Gonzales told the victim to "just [ ] let him do what he was doing," the victim screamed, awakening her sister, who saw that Gonzales was taking off the victim's pants. Gonzales stopped touching the victim and ran out of the room. On another occasion in Gonzales's bedroom, he took the victim's hand and placed it on his penis.

In March 2013, Gonzales picked the victim up from school and was taking her to a dental appointment when he stopped at a red light or stop sign and put his hand on the victim's vagina. Although the victim removed his hand, Gonzales "kept putting his hand back," at which the victim began to cry. On March 28, 2013, the victim told a school guidance counselor that a family friend named Miguel had "tried to molest her in his taxi" on the way to a doctor's appointment and that he had molested her "in the past." When the school principal notified the victim's mother,

the victim told her "everything that had happened," including that Gonzales had been "molesting her since she was seven years old," touching her "with [her] clothes [on] and without."

Gonzales was arrested and charged with child molestation arising from the first touching incident, which was alleged to have occurred between April 3, 2007, and April 2, 2008 (Count 1); aggravated sexual battery arising from the incident witnessed by the victim's sister and child molestation arising from the incident of Gonzales placing the victim's hand on his penis, both of which were alleged to have occurred between April 3, 2007, and March 21, 2013 (Counts 2 and 3); and child molestation arising from the incident in Gonzales's taxi, which was alleged to have occurred "on or about" March 22, 2013 (Count 4). After a jury found Gonzales guilty of Counts 1, 2, and 4,[1] he was convicted and sentenced to 25 years to serve. His motions for new trial were denied.

Although Gonzales does not challenge the sufficiency of the evidence against him, we have reviewed the record, and conclude that the evidence was sufficient to sustain his conviction. See OCGA §§ 16-6-4 (a) (defining child molestation), 16-6-22.2 (b) (defining aggravated sexual battery); *Burke v. State*, 208 Ga. App. 446, 446

---

[1] Gonzales was found not guilty of Count 3.

(1) (430 SE2d 816) (1993) (evidence including that the defendant penetrated the victim's vagina with his finger supported his conviction for aggravated child molestation and aggravated sexual battery); *Jackson*, supra, 443 U. S. at 319 (III) (B).

2. *Victim's truthfulness; ineffective assistance of counsel.*

Gonzales asserts that (a) the trial court erred when it refused his request to ask the victim whether she always told the truth, thus allegedly revealing a character trait for untruthfulness and that (b) trial counsel was ineffective in failing to elicit testimony on this subject from either (i) the victim or (ii) her mother. We find that the trial court did not err by refusing to allow counsel to ask the victim whether she always told the truth and that counsel was not ineffective in this regard. But we find that counsel's decision not to elicit testimony from the mother amounted to ineffective assistance of counsel.

(a) OCGA § 24-6-608 (b) provides in relevant part:

*Specific instances* of the conduct of a witness[ ] *for the purpose of attacking or supporting the witness's character for truthfulness . . . may not be proved by extrinsic evidence.* Such instances may however, *in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination* of the witness: (1) [c]oncerning the witness's character for truthfulness or untruthfulness; or (2) [c]oncerning the character for truthfulness or untruthfulness of another

5

witness as to which character the witness being cross-examined has testified.

(Emphasis supplied.) "[A]s a general rule, admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse." *Anderson v. State*, 337 Ga. App. 739, 742 (1) (788 SE2d 831) (2016) (citation and punctuation omitted). Although a defendant is entitled to a "thorough and sifting" cross-examination, for example, a trial court has broad discretion in determining the scope and relevancy of that examination. *Morris v. State*, 341 Ga. App. 568, 570-571 (1) (802 SE2d 13) (2017). And this Court has noted that OCGA § 24-6-608 authorizes only "the use of *specific* instances of conduct in order to attack (or support) a witness's character for truthfulness[.]" *Gaskin v. State*, 334 Ga. App. 758, 762 (1) (a) (780 SE2d 426) (2015) (emphasis supplied).

The victim's therapy records, which the trial court reviewed but excluded from evidence, included a therapist's notes that the victim had "a history of lying to her mother" and that the mother had told the therapist that she could not trust the victim because the victim "constantly lies to her and does things to be vindictive." When Gonzales sought to ask the victim, "Do you always tell the truth?" the trial court

6

sustained the State's objection to the question. Later in the trial, Gonzales asked the court to reconsider its ruling and sought to ask whether the victim "tell[s] the truth to figures of authority?" The trial court disallowed this question as well on the ground that it was impermissible character evidence.

Both of the questions Gonzales sought to ask of the victim — "Do you always tell the truth?" and "[Do you] tell the truth to figures of authority?" — were so broadly phrased as to have no other effect than to prove a general character trait for untruthfulness. Because these questions did not seek to investigate any specific "act probative of untruthfulness," *Gaskin*, 334 Ga. App. at 763 (1) (a), there was no abuse of discretion in barring these questions, which were designed to attack the victim's character.

(b) (i) Given that the victim's general propensity for untruthfulness was a subject not properly for cross-examination, Gonzales's trial counsel could not have been ineffective for failing to convince the trial court that its ruling on the subject was incorrect. *Hall*, 202 Ga. at 704 (4) (d) (trial counsel was not ineffective in failing to object to the court's limitation of questioning as to a witness's reputation for truthfulness when that limitation was not an abuse of the court's discretion).

(ii)

Gonzales argues that trial counsel was ineffective for failing to ask the victim's mother her opinion about the victim's untruthfulness. We agree.

A misapprehension of the law was the basis for trial counsel's decision. So that decision amounted to deficient performance. And the deficient performance was prejudicial because Gonzales's convictions depended entirely on questions of credibility.

The State stipulated that, had the mother been asked, she would have testified on cross-examination consistently with what she had said to a counselor: that in her opinion, the victim was untruthful. At the motion for new trial hearing, trial counsel explained her rationale for not asking the mother her opinion of the victim's untruthfulness. Counsel testified that her strategy was to ask the victim whether she always told the truth, and if the victim answered that she was always truthful, counsel would "bring in the evidence of the mother who had [told a counselor] that she was not truthful." That strategy failed when the trial court sustained an objection to the question. So counsel did not ask the mother for her opinion of her daughter's truthfulness or lack of truthfulness. Counsel explained that, without the victim's testimony on the issue, she anticipated a meritorious objection on the basis of "facts not in evidence. . . . [She] didn't think that that was the way you laid a foundation;

8

that you had to ask the person, the person tells you – tells the lie. You impeach the person with the third person. . . . [I]t [did not] ever occur[] to [her] to skip . . . one person."

Trial counsel was mistaken. The mother's opinion about the victim's untruthfulness was admissible, regardless of whether the victim testified about her own truthfulness, under OCGA § 24-6-608 (a) (1). That statute provides in relevant part, "The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, subject to the following limitations: The evidence may refer only to character for truthfulness or untruthfulness." Id. "[O]pinion testimony is a personal assessment of character. The opinion witness is not relating community feelings, the testimony is solely the impeachment witness' own impression of an individual's character for truthfulness." *United States v. Watson*, 669 F2d 1374, 1382 (11th Cir. 1982).

Since counsel's decision not to question the mother was based on a misapprehension of the law, it cannot be deemed effective assistance on the basis that it was a strategic choice. "[B]ecause counsel's failure to [ask the mother's opinion] was due to a misapprehension of the law rather than any unwise choices of trial tactics and strategy, . . . trial counsel's performance fell below an objective standard

9

of reasonableness." *Owens v. State*, 317 Ga. App. 821, 825 (1) (733 SE2d 16) (2012) (citation omitted).

So the question becomes whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U. S. 668, 694 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984). "In close cases, where the evidence presented by the state is thin, mistakes made by trial counsel take on greater significance." *Zant v. Moon*, 264 Ga. 93, 99 (2) (440 SE2d 657) (1994). In this case, there is a reasonable probability that the outcome would have been different absent trial counsel error because the victim's credibility was a critical point as to all of the counts, and in fact, as to two of the three convictions it was the only evidence.

The evidence was not overwhelming. The victim's statements were not completely consistent. On cross-examination, she testified that she did not "want to answer" questions about the allegations of the aggravated sexual battery. The state presented no medical evidence to support the charges. Gonzales testified at trial, denying the charges and describing what he believed was the victim's motive for accusing him. Two of the three convictions depended exclusively on the testimony

of the victim and witnesses to whom she made statements. The third, while further supported by the testimony of the victim's sister that the act was in her presence, also turns entirely on credibility. Indeed, in its closing statement, the State argued that the victim was "not impeached in any way"; that her "testimony st[ood] uncontroverted"; and that "we know the victim in this case is truthful [because] she has no motive to lie."

"[The victim's] credibility was critical to the [State's] case. The [mother's opinion that the victim was untruthful] would certainly be essential to a jury's decision whether to believe [the victim's] testimony, without which the [State] would have no case." *United States v. Watson*, 669 F2d at 1383 (citation and punctuation omitted). "Since the evidence against (Gonzales) was not overwhelming, resting largely upon the testimony of one witness, a reasonable probability exists that the presence of (the mother's testimony that in her opinion, the victim was untruthful) would have affected the result." *State v. Crapp*, 317 Ga. App. 744, 748 (2) (732 SE2d 806) (2012) (citations and punctuation omitted). In other words, there is reasonable probability that the outcome would have been different had counsel correctly understood the law and asked the mother her opinion of the victim's untruthfulness. See *Johnson v. State*, 266 Ga. 380, 383 (2) (467 SE2d 542) (1996) (defendant showed

11

a reasonable probability of a different outcome arising from ineffective failure to elicit evidence of victim's prior act of violence where, "[a]lthough the jury heard evidence that, just prior to his death, the victim was drunk, enraged and threatening to kill appellant with a knife or gun, all but one of those witnesses also testified that they saw nothing in the victim's hands"); *Gaskin* supra, 334 Ga. App. at 764 (1) (b) (in "he said, she said" child molestation case with OCGA § 24-6-608 (b) issue, harmful error occurred when state questioned victim's mother about defendant's prior arrests, after the mother had testified that knowing defendant's reputation for truthfulness, she would believe his testimony under oath); *Johnson v. State*, 284 Ga. App. 147, 151-152 (2) (643 SE2d 556) (2007) (in aggravated child molestation case based solely on the testimony of the two alleged victims, defendant showed a reasonable probability that the outcome of the case would have been different but for trial counsel's deficient performance in, inter alia, failing to impeach victims). See also *State v. Mayfield*, 822 NW2d 122 (Iowa Ct. App. 2012) (in child endangerment case involving application of evidentiary rule consistent with OCGA § 24-6-608 (a) (1), improper exclusion of witnesses' opinions that victim was untruthful was prejudicial, given that case hinged on the victim's testimony). Cf. *Cowart v. State*, 294 Ga. 333, 342 (5) (751 SE2d 399) (2013) (admission of improper evidence

bolstering witness's testimony harmful error when witness's testimony was the only evidence against defendant); *Mann v. State*, 252 Ga. App. 70, 555 SE2d 527 (2001) (in aggravated sodomy case in which the only evidence against defendant came through the testimony of the victim and witnesses to whom he made statements, trial counsel was ineffective for failing to object to two witnesses' testimony that they believed the victim).

Gonzales has "carried his burden to show that his trial counsel provided ineffective assistance as defined in *Strickland*." *Kennebrew v. State*, 299 Ga. 864, 874 (2) (c) (792 SE2d 695) (2016).

3. *Jury selection.*

Gonzales argues that the trial court erred when it barred him from asking prospective jurors whether they believed that he was guilty of "something," which counsel explained as meaning the crime of child molestation. We disagree.

The conduct of voir dire "is within the discretion of the trial court," and "the court's rulings are presumed proper in the absence of some manifest abuse of discretion." *Ridgeway v. State*, 174 Ga. App. 663, 665 (3) (330 SE2d 916) (1985) (citation omitted); *Ganas v. State*, 245 Ga. App. 645, 647 (2) (537 SE2d 758) (2000);

13

see also Uniform Superior Court Rule 10.1 ("the form, time required and number" of questions asked of prospective jurors "is within the discretion of the court").

The record shows that during voir dire, the trial court asked the venire whether any of them had "formed or expressed any opinion" as to Gonzales's guilt or innocence, whether any of them had "any prejudice or bias" for or against him, and whether their minds were "perfectly impartial [as] between the State and the accused." Shortly afterward, when Gonzales asked the venire "how many here, as you sit here right now, believe [he] is guilty of something," the trial court called a bench conference during which counsel explained that she wanted to ask the jurors whether they believed that Gonzales was "guilty of child molestation." The trial court responded that it was "not going to allow you to ask that question," and that although Gonzales could inquire about the prospective jurors' "leaning" or "biases," he could not ask about the ultimate issue of "guilt or innocence." When Gonzales again asked the court whether he could ask whether the prospective jurors had "made a decision" about Gonzales "as you sit here today," the trial court barred the question, explaining again that counsel could ask whether they would "presume him innocent" as instructed and whether they had any "bias against [Gonzales]" as opposed to a "bias

14

against child molestation." The court explained that jurors might find such questions, which tended to conflate these subjects, "confusing."

The relevant test as to a question for the venire is whether the prospective juror has formed an opinion on the guilt or innocence of the accused which is "so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence." *McClain v. State*, 267 Ga. 378, 380 (1) (a) (477 SE2d 814) (1996) (citation and punctuation omitted). Accordingly, this Court has long held that "no question should be framed so as to require a response from a prospective juror which might amount to a prejudgment of the case." *Thrasher v. State*, 197 Ga. App. 593, 595 (1) (398 SE2d 850) (1990); *Atlanta Joint Terminals v. Knight*, 98 Ga. App. 482, 488 (4) (106 SE2d 417) (1958); see also *Evans v. State*, 222 Ga. 392, 400-401 (13) (150 SE2d 240) (1966) (citing *Knight* with approval, but overruled on other grounds, *Harris v. State*, 255 Ga. 464, 464 (2) (339 SE2d 712) (1986)).

Here, the trial court had already asked the venire whether any of them had formed or expressed any opinion as to Gonzales's guilt or innocence, whether any of them had "any prejudice or bias" for or against him, and whether their minds were "perfectly impartial [as] between the State and the accused." In light of the

15

prospective jurors' responses to these questions, which showed that they were impartial, the trial court did not abuse its discretion when it barred Gonzales from asking the further and potentially confusing question whether, before having heard any evidence, the prospective jurors believed him "guilty of something." *Thrasher*, 197 Ga. App. at 595 (1) (a question whether or not prospective jurors "believed" a defendant to be "innocent" was "improper"); *Evans*, 222 Ga. at 400-401 (13) (no abuse of discretion in refusing to permit counsel to ask prospective jurors whether defendant, "at this time, right now," was "an innocent man").

4. *Jury instructions; ineffective assistance of counsel.*

Gonzales also argues that (a) the trial court erred when it charged the jury that the State need only prove that the offenses occurred "within seven years prior to the filing of the indictment regardless of the date listed in the indictment" because the charge vitiated his alibi defense, and (b) counsel was ineffective for failing to object to this portion of the charge. We disagree.

Before trial, the State requested a charge that

> the indictment in this case does not state that the date of the offense is a material averment or element; therefore it is sufficient that the State shows that the offense occurred within the seven years prior to the filing of the indictment regardless of the date listed in the indictment.

16

During the charge conference, Gonzales's trial counsel objected to this charge as "misleading because there is one charge where there is a specific date averred" – March 22, 2013, as stated in Count 4,[2] as to which Gonzales sought to prove via cell phone records that he was not in the area on that date. The trial court responded that it would give the pattern charge, and counsel did not object. The trial court later charged the jury that the indictments for child molestation and aggravated sexual battery "[did] not state that the date of the offense is a material averment or element" of the offenses of child molestation or aggravated sexual battery, and that as a result, "it is sufficient that the State show[] that the offense occurred within seven years prior to the filing of the indictment regardless of the date listed in the indictment."

In the absence of any explicit objection to the trial court's resolution of this issue at the charge conference, we review the given instruction only for plain error. *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

> First, there must be an error or defect . . . that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to

---

[2] Count 4 stated, however, that the attack in the taxi was alleged to have occurred "on or about" that date. The "on or about" language "was sufficient to put (Gonzales) on notice that the exact date might vary from the date contained in the (indictment)." *Jacoway v. State*, 225 Ga. App. 712, 713 (484 SE2d 757) (1997).

17

reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the trial court proceedings." Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

Id. at 33 (2) (a) (citations and punctuation omitted).

As authority for the charge at issue, the State cited our decision in *Norman v. State*, 278 Ga. App. 497 (629 SE2d 489) (2006), in which we noted that "[w]here the exact date of the commission of a crime is not a material allegation in the indictment, it may be proved as of any time within the statute of limitation." Id. at 499 (4), citing *Frazier v. State*, 252 Ga. App. 627, 629 (2) (557 SE2d 12) (2001) (punctuation omitted). When an indictment does not make the specific date of an offense a material allegation, a defendant's ability to present a defense is not affected as long as the indictment alleges a range of dates and "the evidence showed that the acts of molestation occurred between such dates." *Frazier*, 252 Ga. App. at 630 (2). It follows that the charge given by this trial court was proper, and no error, plain or otherwise, has been shown. *Norman*, 278 Ga. App. at 499 (4) (affirming charge on

18

allowing State to prove a crime's date "as of any time within the statute of limitation" when the exact date was not a material allegation in the indictment).

(b) Because no error has been shown as to the jury charge, counsel could not have been ineffective in failing to object to it. *Hayes v. State*, 262 Ga. 881, 884-885 (3) (d) (426 SE2d 886) (1993).

*Judgment reversed. Bethel, J., concurs. Branch, J., dissents.\**

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2.**

A17A1857.  GONZALES v. THE STATE.

BRANCH, Judge, dissenting.

Although Gonzales argues that he was prejudiced by counsel's failure to elicit testimony from the mother that her daughter was untruthful, counsel testified at the hearing on Gonzales's motion for new trial that counsel chose not to do so because in the absence of testimony from the child herself as to her truthfulness, the mother's opinion on the subject would have been based on facts not in evidence. The trial court concluded that declining to extend cross-examination of the mother to the subject of the victim's untruthfulness was a reasonable legal strategy. Because we are not entitled to substitute our judgment for that of counsel and the trial court on this issue, I dissent.

In the landmark case of *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984), the United States Supreme Court noted that

[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Id. at 689-690 (III) (A); see also *Arnold v. State*, 292 Ga. 268, 270 (2) (a) (737 SE2d 98) (2013). This Court has thus held that "which witnesses to call and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his client, and whether an attorney's trial tactics are reasonable is a question of law, not fact." *Howard v. State*, 340 Ga. App. 133, 140 (2) (a) (796 SE2d 757) (2017) (footnote and punctuation omitted); see also *Perdue v. State*, 298 Ga. 841, 845 (3) (785 SE2d 291) (2016) (the decision as to which defense witnesses to call is a matter of trial strategy and tactics).

At the hearing on Gonzales's motion for new trial, his counsel testified that Gonzales was "adamant about being involved" in his own defense "from beginning to end," including the decision whether to obtain testimony from the victim's mother

as to the victim's untruthfulness even in the absence of the victim's own testimony on the subject. Counsel also testified that Gonzales's strategic goal was to elicit the victim's own testimony concerning her truthfulness "out of the [victim's own] mouth," and only then to show that her own mother told a treating psychologist that the child "[told] lies to get what she wants." Later at the same hearing, however, counsel testified that the defense team had found the mother's opinion that the victim was "vindictive," "not truthful," and "a liar" to be the "best evidence" with which to impeach the victim's credibility, and that there had been no strategic reason for failing to obtain this opinion on cross-examination.

Even if counsel later, with the benefit of the hindsight provided by appellate counsel, found fault with the decision not to extend cross-examination of the victim's mother to the subject of the victim's truthfulness, that decision was undertaken after consultation with Gonzales, and the trial court, resolving contradictory testimony from counsel, explicitly found it to be part of a reasonable trial strategy. See *Jarvis v. State*, 269 Ga. App. 415, 415 (3) (604 SE2d 258) (2004) (counsel's failure to call victim's mother to testify as to the mother's "longstanding grudge" against a child molestation defendant was not deficient performance). Because we are not justified under these facts to substitute our judgment for that of counsel and the trial court on

3

this issue, I dissent to the reversal of Gonzales's conviction on the ground that trial counsel was ineffective in this regard.