**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL and GOBEIL, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**August 17, 2018**

# In the Court of Appeals of Georgia

A18A0848. JACKSON v. THE STATE

BETHEL, Judge.

Anthony Jackson appeals from the denial of his motion for a new trial after he was convicted of first-degree arson, four counts of aggravated assault on a public safety officer, aggravated assault, first-degree burglary, and possession of a firearm during the commission of a felony. On appeal, Jackson argues that the State presented insufficient evidence to support his convictions for arson and aggravated assault.[1] He also argues that the trial court erred by not sitting as the "thirteenth juror" as required by OCGA §§ 5-5-20 and 5-5-21. For the reasons set forth below, we affirm.

---

[1] Jackson does not contest the sufficiency of the evidence presented by the State on the other charges.

On appeal, a defendant "is no longer presumed innocent and all of the evidence is to be viewed in the light most favorable to the jury verdict." *Batten v. State*, 295 Ga. 442, 443 (1) (761 SE2d 70) (2014) (citation omitted). So viewed, the evidence presented at trial shows that during the early morning hours of April 6, 2016, a police officer encountered Jackson at his mother's home. Jackson fled from the home and sped away in a vehicle, commencing a high speed chase with police. During the chase, Jackson wrecked the vehicle and fled on foot. He later barricaded himself in a trailer as police searched for him.

A neighbor heard his dogs barking in response to sounds coming from the trailer. In response, the neighbor went over to investigate and noticed that the back door's light was on and that the side of the trailer had a gunshot hole that he had not previously noticed. The neighbor returned to his home and called 911 and the homeowner to report the apparent vandalism of the trailer. After calling the police, the neighbor instructed his girlfriend to bring him his shotgun and both the neighbor and his girlfriend drove back to the trailer. When the two arrived, they heard a noise from inside the trailer and began to shine a light into the trailer windows. Immediately, a shot was fired from inside the trailer.

In response to the gunshot, the neighbor instructed his girlfriend to leave the property and he ducked behind his own car because he was afraid that both he and his girlfriend would get shot. The girlfriend also testified that she was afraid she would get shot, so she got in her car and drove to the end of the driveway. The neighbor used his fire radio and then separately called 911 to let law enforcement know that someone was still inside the trailer.

Several law enforcement officers later arrived at the trailer. Throughout the evening, Jackson sporadically fired shots at the law enforcement officers. At trial, three law enforcement officers testified that they feared they would be killed by the shots fired at them. One of Jackson's shots struck the sheriff's car window a hundred yards from the residence, striking "inches" from the head of a fourth law enforcement officer at the scene. That officer testified at trial that the fear of being struck by a projectile caused him to exit the patrol car.

Law enforcement officers at the scene attempted to negotiate with Jackson throughout the night in order to coax him from the trailer. After sunrise, Jackson yelled "Now that the sun is up, now I can see you, so I can shoot you." In the morning, law enforcement officers could see Jackson igniting fires inside the trailer. At one point after the fires were lit, Jackson barricaded the window with a mattress.

3

Once the fire got to a point where the lead law enforcement officer at the scene believed Jackson to be dead, he allowed the fire department to extinguish the fire.

When law enforcement officers entered the trailer, they found Jackson alive laying under the trailer with a shotgun next to him. Jackson was then taken into custody. At trial, the State presented photographic evidence of Jackson being removed from under the trailer and one of the officers identified Jackson as the person that was captured from the trailer that day. The lead law enforcement officer at the scene testified that no other persons were found in or under the trailer.

An investigator testified that six days after Jackson was taken into custody and advised of all his rights, Jackson gave his own account of the events of April 6 and 7, 2016. The State played this recorded interview to the jury in which Jackson stated that he voluntarily used methamphetamine on April 6 when he initially fled from law enforcement and that after he wrecked his vehicle, he came upon the trailer. Jackson stated that at some point he became scared and started shooting the inside of the mobile home with firearms he found within the trailer. He admitted to starting a fire in the kitchen using tissue paper and a fire in the bedroom using rubbing alcohol and paper. Jackson also outlined his escape plan and stated that he had created a hole in

the trailer so that he could hide and that he had the shotgun with him so he could use it during his escape.

At trial, the state fire investigator showed several photographs of the "extensively damaged" trailer and the loaded .22 caliber rifle found in the debris of the trailer. The owner of the trailer testified that his property got burned up, rusted, and damaged "pretty badly" because of Jackson's actions.

Following his conviction, Jackson filed a motion for a new trial, asserting the same grounds enumerated as error here. The trial court denied that motion, and this appeal followed. .

1. Jackson first argues that the State did not present sufficient evidence to support his convictions for arson and aggravated assault. We disagree.

(a) OCGA § 16-7-60 (a) (1) provides that "a person commits the offense of arson in the first degree when, by means of fire or explosive, he or she knowingly damages [a]ny dwelling house of another without his or her consent[.]" The indictment alleged that Jackson committed arson in the first degree when he knowingly set fire to the trailer. .

On appeal, Jackson claims that because the events occurred at night and because none of the witnesses were experts in flammability or combustibility, that it

5

was not possible for the witnesses to say that Jackson started the fire. This argument is meritless. "It is the function of the jury, not the Court, to determine the credibility of witnesses and to weigh and resolve any conflicts in the testimony." *Blackman v. State*, 178 Ga. App. 88, 89 (1) (342 SE2d 24) (1986). Here, law enforcement officers who were at the scene that night testified that they could see Jackson starting the fire through the kitchen windows. Thus, although it is correct that none of the State's witnesses were presented as fire experts, the extent to which their testimony should be credited in regard to Jackson's alleged act of arson was for the jury alone to resolve. *See* OCGA § 24-6-620 ("The credibility of a witness shall be a matter to be determined by the trier of fact[.]"). *See also Gibbs v. State*, 340 Ga. App. 723, 729 (3) (798 SE2d 308) (2017) (noting need for expert testimony only where "the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman." (citation omitted)).

Moreover, additional evidence supports the State's allegation that Jackson started the fire. The record indicates that Jackson confessed to police that he set fire to the trailer using rubbing alcohol, tissue paper, and a lighter. *See Owens v. State*, 204 Ga. App. 5, 6 (2) (418 SE2d 631) (1992) (confession of defendant supported arson conviction). Jackson was also the only person identified in the residence during

6

the fire and was photographed as he was being removed from his hiding place. There was therefore sufficient evidence to authorize the jury to determine that Jackson set fire to the trailer and committed the offense of first degree arson.

(b) There was also sufficient evidence from which a jury could find Jackson guilty of the aggravated assault charges beyond a reasonable doubt. The indictment alleged that Jackson committed five counts of aggravated assault when he used a shotgun to shoot in the direction of the neighbor and four law enforcement officers who were at the scene. OCGA § 16-5-20 (a) (2) provides that "[a] person commits the offense of simple assault when he or she . . . [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-21 (a) (2) provides that "a person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily harm[.]" OCGA § 16-5-21 (c) (1) provides that an aggravated assault on a public safety officer occurs when a person "knowingly commits the offense of aggravated assault upon a public safety officer while he or she is engaged in, or on account of the performance of, his or her official duties[.]"

7

Jackson argues that the evidence presented against him was insufficient because the State did not produce any physical evidence or photographs of the bullet holes, but rather, relied solely on the testimony of several law enforcement officers and the other person who claimed to have been shot at by Jackson. The trial court's ruling on Jackson's motion for new trial correctly notes that it is well-established that testimony of witnesses is sufficient to support a guilty verdict if it is believed by the jury. *See* OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact."). In this case, each victim testified with regard to how they knew that they had been fired upon. Moreover, each victim testified that he feared for his life and that Jackson's actions of firing upon them with deadly weapons placed them in apprehension of receiving serious injury or death. . This evidence was sufficient to support each of the counts of aggravated assault charged in the indictment. *See Wright v. State*, 302 Ga. App. 101, 102 (1) (690 SE2d 220) (2010) (victim's testimony that defendant pointed gun at him established that defendant placed victim in reasonable apprehension of immediately receiving a violent injury); *In the Interest of T. O. J.*, 295 Ga. App. 343, 345 (1) (672 SE2d 14) (2008) (victim testimony establishing that defendant fired multiple shots in their direction sufficient to support conviction for aggravated assault); *Baker v. State*, 273 Ga. App. 297, 299 (1) (614

8

SE2d 904) (2005) (noting that jury must weigh testimony identifying of shooter and is charged with resolving uncertainties or incompleteness in testimony presented).

2. Jackson next argues that the trial court erred when it failed to sit as a "thirteenth juror" on his case and denied his motion for a new trial as required by OCGA §§ 5-5-20 and 5-5-21. Even when evidence is legally sufficient to sustain a conviction, a trial judge may grant a new trial if the verdict of the jury is "contrary to . . . the principles of justice and equity," or if the verdict is "decidedly and strongly against the weight of the evidence." *See* OCGA §§ 5-5-20 and 5-5-21. "A trial court reviewing a motion for new trial based on these grounds has a duty to exercise its discretion and weigh the evidence and consider the credibility of the witnesses." *Choisnet v. State*, 292 Ga. 860, 861 (742 SE2d 476) (2013) (citations omitted). If the trial court performs this duty, then we have no basis for reviewing the court's decision, as "such a decision is one that is solely within the discretion of the trial court." *Dixon v. State*, 341 Ga. App. 255, 264 (2) (b) (800 SE2d 11) (2017) (citation omitted). "On appeal from the trial court's denial of a motion for a new trial on the general grounds set forth in OCGA §§ 5-5-20 . . . or 5-5-21 . . . the appellate court has no discretion to grant a new trial on that ground; we can only review the evidence to determine if there is any evidence to support the verdict." *Morrison v. Kicklighter*,

329 Ga. App. 630. 631 (1) (765 SE2d 774) (2014) (citations and punctuation omitted).

The record reflects that the trial court weighed the evidence presented at trial when Jackson argued for a new trial based on general grounds and, noting the overwhelming evidence of guilt presented by the State, declined to overturn the verdict on this basis. *See Perdue v. State*, 298 Ga. 841, 844 (2) (785 SE2d 291) (2016) (court exercises its discretion under OCGA § 5-5-21 when it notes its own observations of the weight of the evidence presented at trial). Therefore, the trial court did not abuse its discretion by denying Jackson's motion for a new trial on these grounds.

*Judgment affirmed. Ellington, P. J., and Gobeil, J., concur.*